KELTNER
vs
KELTNER.

</div>

---

CHANCERY.

Case 12.

6bm 40
133  505

*Sept. 25.*

Statement of the
case and decree
of the Circuit
Court.

# Keltner *vs* Keltner.

ERROR TO THE ADAIR CIRCUIT.

*Contracts, rescission of.*

JUDGE MARSHALL delivered the opinion of the Court.

THIS bill was filed by Michael Kiltner, Sr., to set aside a deed whereby he conveyed to his two sons, John and Michael, a tract of land, (520 acres,) for the consideration partly of money paid, partly of natural affection, and partly in consideration that they undertook to maintain, support, and take care of the grantor and his wife during their lives. The bill alledges ill treatment of the parents by the sons, and a failure and actual refusal on their part, to perform the stipulation with regard to support and maintenance, denies the payment of any money consideration, and prays for a rescission, or restoration of

possession, and a decree for rents, alledged to have been worth $100 per annum.

The answers deny the alledged violations of the undertaking of the defendants, aver that they paid the sum mentioned in the bill, and that they have been always ready and willing to support, and have offered and still offer to support their parents, and further say, that they have made lasting and valuable improvements on the land, &c. Much testimony was taken in regard to the treatment of the parents by the sons, which was detailed principally by other children of the same parents, who, though they had no legal interest in the controversy, would doubtless derive some advantage from the cancelment of this deed, and especially in the state. of feeling on the part of the father towards the grantees of the land which might exist after such a termination of the contest. On final hearing, the Court peremptorily set aside the deed, and decreed a restoration of the possession.

If the deed should have been set aside and the contract rescinded, equity would seem to have required that the money acknowledged in the deed to have been received, or at least so much as had been paid, should have been restored, and that an account of this, and other matters requisite for placing the parties in *statu quo*, should have been taken. But we are of opinion, upon consideration of all the circumstances in the case, that the decree setting aside the deed and terminating the arrangement intended to be secured by it, was not required by the equity of the case, and was improvident and erroneous.

*Upon a rescission by Chancellor, the parties should be placed in statu puo, and money paid should be ordered to be refunded.*

In the first place, the stipulation for support constituted but a part of the consideration of the deed, and a partial failure in that stipulation should not necessarily operate to rescind the contract, but should rather lead to the enforcement of the executory part of it, if it can be done so as substantially to attain the objects of the contract.

*Contract for support, (being part consideration for estate sold,) and failure to perform it, shoud rather operate as a ground for enforcing performance thereof, than for rescinding the contract by the Chancellor.*

And in the second place, we are not satisfied that there has been such a breach of the stipulation on the part of the grantees, as should operate to forfeit the contract, or as necessarily to show that so far as they are concerned, the objects of the arrangement have not been, and may not still be substantially obtained.

The land though large enough in extent, is poor in quality—it is worth but $100 a year. The parties were and still are all poor. They all had been used to labor and were compelled to labor for a support. The father was of intemperate habits and of rude and quarrelsome disposition. His personal property had been sold out. He and his wife could not live together and had separated. There was little probability of their being able to maintain themselves comfortably on the land; and some arrangement like that which was made, by which the land was divided between the two sons, with whom the parents resided separately, seems to have been entirely prudent if not necessary. It does not appear that if the parents had fallen into the hands of others of their children, they would have fared better than they have done, or that if this arrangement should be set aside they will fare better under any new arrangement which their more advanced age may now compel them to make. Then again, what was expected from these two sons who had absolutely nothing but the poor land which was deeded to them by their father? Was it expected that the parents should be relieved entirely from all labor, and be supported in a stile different from that to which they had been accustomed? Doubtless it was anticipated that a time might come when they could not even contribute to their own support, and it was an important object of the deed to provide for such a time. But we do not consider that the proof that the father occasionally labored for clothes or for the means of purchasing them, or that the mother and her two daughters, (not provided for in the deed,) labored in the field with Michael, with whom they lived, and after his marriage had a portion of his land to themselves, on which they made the principal part of their support, constitute such flagrant violation of the arrangement as should work a forfeiture. The parties appear to have lived in this way for some five or six years without complaint, and but for a violent quarrel and struggle which occurred on one occasion between the father and John, with whom he lived, and in consequence of which the father left the place and has not returned to live there, although John avowed his willingness to support him, if he would live

any where on the place, it is probable that there would still have been no complaint in a Court of Justice. And although the son grossly misbehaved under the excitement of that occasion, still it does not appear that he brought on the quarrel, and as the actual violence was commenced by the father; we should not deem this single instance a proper ground of breaking up the arrangement against the will of the son.

Undoubtedly it was the duty of the sons to have treated their parents with respect, to have attended to their wants, and to have supplied them as far as could reasonably be done, receiving from them also, such assistance as they were able and willing to afford. The support and maintenance expected, was such as could be furnished from and upon the land. It was not expected that the sons should board their parents at another place, unless by mutual consent, or unless by their own conduct they had given them good reason for not remaining on the land. And although we are of opinion that the sons have not come fully up to the line of their duty, and although habitual ill treatment of their parents, or a habitual failure to supply their reasonable wants to the extent of their abilities, and in such way as should be agreed on, might furnish just ground for terminating the contract upon equitable terms; yet the casual failures and occasional disagreements which might have been expected in the condition in which these parties were placed, should not be allowed to have this effect.

But while we think the case is not such as calls, at present, for a rescission of this contract, we are also of opinion that the facts disclosed in connection with the increased age and infirmities of both parents, are such as call for the protection, and perhaps the active aid of the Chancellor in securing to them for the future, a more perfect fulfilment of the stipulation for their support by the sons, than they have heretofore received, and we conceive it to be in his power, through the intervention of a Master Commissioner, to provide that such suitable arrangements shall be made for the future comfort of the complainant and his wife, as may be agreed on by the parties, or be deemed reasonable by the Chancellor, taking into

KELTNER
vs
KELTNER.

consideration their actual condition and circumstances; and he might retain the cause under his control for the purpose of securing to the parents the benefit of the arrangement which might thus be made. A refusal on the part of the sons, to enter into such arrangement, or a serious violation of it afterwards, might be deemed sufficient ground for rescinding the contract.

We think nothing has yet occurred which renders it necessary that the parents should be supported elsewhere than on the land conveyed for their support; and it may be supposed that after fourteen years labor upon that land, the sons are in a condition to afford them a better and more comfortable support than they had done before this bill was filed. In view of all the circumstances, we think the course above indicated will secure, substantially, the objects of the deed, and will be more accordant than its peremptory annulment, with the principles of equity as applicable to the case.

Wherefore, the decree is reversed and the cause remanded for further proceedings, in conformity with this opinion.

*B. & A. Monroe* for plaintiffs.

---

**CHANCERY.**

*Case* 13.

*Sept.* 23.

case stated.