*Burnam, Turner, for appellant.*

---

### A. P. GROVER ET AL *v.* MARY WIGGINTON ET AL.

**Wills—In Handwriting of Testator.**

Where nothing else appears, proof that a will was wholly written by the testator, is sufficient to admit it to record, the legal presumption of publication arising from this, and the assailing evidence must overcome this presumption.

**Same—Sanity—Evidence to Overcome.**

Sanity is presumed by law, and evidence therefore must not only be sufficient to counter-balance the evidence of sanity, but also to overcome this legal presumption.

**Same—Evidence Responsive to New Matter of Defendants.**

Where a witness of the defendant, in his statements as to a will, sought to be declared void, states new matter as to a conversation between him and witness for plaintiff, the plaintiff would be entitled to reintroduce the witness, as responsive to and explanitory of the new matter of plaintiff.

**Wills—Attest.**

A will, written in the handwriting of the testator, closed with "In witness of all which I have hereunto set my hand and seal this 12th day of April, 1849.—Attest." Held that the word "attest" in its relative position to the name of testator, does not evidence that he intended to acknowledge it before witnesses previous to its taking effect.

**Same.**

This would not be sufficient to authorize the rejection of the paper as an unfinished and incomplete will.

APPEAL FROM OWEN CIRCUIT COURT.

December 21, 1869.

OPINION OF THE COURT BY JUDGE HARDIN:

The Owen county court, in the year 1863, having established a paper propounded as the last will and testament of Edward G. Vallandingham, deceased, by the appellee and legatee Mary D. Wigginton and her husband, it was, in the year 1867, taken to the circuit court by a writ of error, at appellants instance, where, upon issue and evidence, the jury found it to be the true last will and testament of the testator, and the court having so adjudged, appellant seeks a reversal in this court.

This holographic will was found some six months after testator's death, in the year 1865, and near seventeen years after it bears date, and some thirteen years after he had been declared a lunatic in 1852; wherein the jury then found his lunacy to be of two years previous duration.

It is assailed on several grounds.

First, because not sufficiently proved to be in testator's handwriting. But Grover, one of the appellants, states that he was well acquainted with the testator, knew his hand-writing, and believed the paper to be in it, and it is evident from the relationship, intimacy and business relations that he was well acquainted with the testator's writing; besides, this paper had been established in the county court mainly on his evidence, which if he did not then feel to be against his interest he evidently did feel on the trial in the circuit court. Grover's evidence is corroborated by the evidence of other persons and circumstances.

That it was written about the time it bears date is also evidenced by its being in blue ink and an account of Grover against the testator in this cause shows he had recently bought a bottle of blue ink from Grover.

By the legacy of his gray mare to his slave boy "Cidney" at his death, having just previously bequeathed the said boy to his sister, Mrs. Wigginton, after his mother's death and his own. which he would not have done when slavery was so thoroughly demoralized by the late war, and so nearly extinguished by the pending constitutional amendment at the time of his death.

By a bequest of a bed and furniture to Amira Wigginton "that sets in the new room."

All these facts and internal evidences corroborate and strengthen the presumption of law that the instrument bears the real date of its execution. Had the will been written near the close of his life it is not likely that any of his rooms would then have been described as the new one, nor would a bequest have been made to his slave "Cidney," and the request that some of his named slaves were to remain on his farm until his mother's death, should she outlive him, also evidences that it was written before her death.

It must then be regarded as written by him, and at the time it bears date.

But it is said that it attests its own incompleteness, because the attesting clause is as follows:

> "In witness of all which I have hereunto set my hand and seal this 12 day of April, 1849.
> "Attest:                    Edward G. Vallandingham."

The word *attest* in its relative position to his name certainly does not evidence that he intended to acknowledge it before witnesses previous to its taking effect, or be considered as published, rather than attesting the fact of his signature to the whole instrument, as witnessing the desired disposition of his estate. The inference to be drawn from the meaning of this word in its exact relation to his name would be wholly insufficient to authorize the rejection of the paper as an unfinished and incomplete will.

As the paper is established to be in his handwriting and done at the time it bears date the failure to find it for six months after his death is no sufficient cause for its rejection, especially as he had been a declared lunatic for thirteen years, and may, in some freak, have placed it where a sane person would not expect to find a will, and that, too, in the entire absence of any knowledge by any of the kindred or legatees that one had been executed.

But even if an unfavorable inference might be drawn from this, it is greatly weakened from the fact that Mrs. Wigginton desired to explain how it was found in giving her evidence, and from which she was debarred.

Grover being called on to establish the handwriting of the testator, by appellees, went on to state new matter about his calling for papers from Mrs. Wigginton after he administered,

and that she and her husband then gave him some old accounts, receipts, etc., and said they were all that were known to them; he also stated the circumstance of the presentation of the will to him, his intention to contest it because of the incapacity of the testator, and their compromise, and his agreement that the will should be established, and his proving in the county court that it was in the testator's handwriting.

The statement of Mrs. Wigginton as to how and when and under what circumstances she found the will would only have been responsive to the new matter thus stated by Grover, and would have explained and perhaps repelled the unfavorable inference to be drawn from his statements of its non-production when he called on them for papers. So it was improper to refuse her this response to Grover's new matter.

But even if this were not so, we are not prepared to say that section 673, Civil Code, does not secure perfect equality of rights, and if a party being called on to answer specific questions shall go beyond and introduce new matter, that this does not give the party calling on him, in response to his new matter, equally the right to introduce other new matter. There is much reason to give parties equality of rights as to new matter not responsive to the interrogatives, and thereby confine a party so called on to a strict line of response under the penalty of equal privilege to the other party if he should open the door to a response from his adversary.

But we need not now decide this. Our Statute of Wills, 2 stont. Revised Statutes, 458, chapter 106, section 5, provides that

> "no will shall be valid unless it is in writing, with the name of the testator subscribed thereto by himself, or some other person in his presence and by his direction; and moreover, if not *wholly written* by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator."

This statute requires proof by witnesses of publication only when the will is not written by the testator, but when it is so written and this fact established by proving it is in his handwriting, no further proof as to its publication is necessary. If

it be wholly written by the testator, it is good, as was decided by this court in *Hannah vs. Peak's Administrator, 2 Mon., 135.* Nothing else appearing, proof that the will was wholly written by the testator is sufficient to admit it to record, because the legal presumption of publication arises from this, the assailing evidence must overcome this presumption, which it does not in this case.

But little need be said as to the testator's insanity in 1849, for to say the most of this, the evidence is but conflicting, with perhaps a preponderance in favor of his then sane condition.

The jury on the inquest of lunacy did not extend his insanity back that far, the jury in this case has not done so, nor can we under all the evidence in this case, and if we could, still it would not defeat this will as its provisions, at that date, manifest an intelligent, considerate and sane disposition of his estate to such a degree as to elicit from some of appellants' counsel the following eulogium upon the instrument: "A will showing mental powers of the highest character." As the testator wrote the will and at the time it bears date, even if his subsequent insanity was then incipient, the will evidences in itself a writing when the mind that dictated it was sane, whether in a lucid interval, or never having been insane.

Sanity is presumed by law as was decided by this court in *Weir's Will, 9 Dana, 44, Hawkins vs. Graves, 13 B. Mon.* The evidence, therefore must not only be sufficient to counterbalance the evidence of sanity, but also to overcome this legal presumption.

Judgment *affirmed.*

*Scott,* for appellants.

*Craddock,* for appellees.