## Stone v. Stone.
(Decided March 13, 1936.)

CLARENCE MILLER and RODNEY HAGGARD for appellant.

J. W. WALKER and SHUMATE & SHUMATE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

This is an appeal from a judgment entered upon a verdict of ten jurors that a certain paper was the last will and testament of Berry Stone.

## The Primary Facts.

On April 18, 1932, Berry Stone was shot by an assassin. The following day he died. He left as his widow Elizabeth Stone, who qualified as his administratrix. He left no children, and his mother, Mary Stone, as his sole surviving parent, is his heir at law.

On March 13, 1933, upon motion of Elizabeth Stone, a paper, she claimed to have found a few days before in a trunk belonging to Berry Stone, was probated by the Estill county court as his will. From that probate Mary Stone appealed to the Estill circuit court on October 9, 1933, and from a judgment entered upon the verdict there on October 26, 1934, this appeal is prosecuted.

## The Will and the Contest.

The paper in contest reads thus:

"Parvin Ky. March 11, 1931

"I Berry Stone Make this My last and Only will. I give to my wife Lizzie Stone all My Property both real and Personal as long as she remains My widow

"Berry Stone"

This case is much like the case of Polley v. Cline, 263 Ky. 659, 93 S. W. (2d) 363, this day decided, and much said in that case is applicable in this one, but it is not necessary that it be here repeated.

## The Issue.

There is but one issue, and we shall state it bluntly: Is this paper a forgery? The verdict of the jury is that the paper is genuine and is the will of Berry Stone.

If there be no error in the record, that verdict must stand, for the verdict of a jury in a will contest is given the same effect as the verdict of a jury in other civil cases. Section 4850, Kentucky Statutes.

### Grounds for Reversal.

There are but two grounds urged for reversal, and they are: (a) That the court erred in his rulings on the evidence, by admitting incompetent evidence offered by the propounder and rejecting competent evidence offered by the contestant; and (b) that the verdict is not supported by the evidence and is the result of passion and prejudice rather than a consideration of the evidence.

No witnesses attested the execution of this will; hence it was not valid unless wholly written by Berry Stone. See section 4828, Ky. Stats.; Adams' Ex'x v. Beaumont, 226 Ky. 311, 10 S. W. (2d) 1106; Rutledge v. Wiggington, 166 Ky. 421, 179 S. W. 389; Webster v. Lowe, 107 Ky. 293, 53 S. W. 1030, 21 Ky. Law Rep. 998; Toebbe v. Williams, 80 Ky. 661; Grover v. Wiggington, 3 Ky. Op. 271; 28 R. C. L. p. 161, sec. 116 et seq.; and 68 C. J. p. 714, sec. 396 et seq.

That statute means just what it says, there is no more all-inclusive word than "wholly"; it takes in everything from the first letter to the last one. The testator must write all of it. In proving this the propounder is not confined to proof of the whole of it by each witness. One witness may be acquainted with his signature and that may be shown by such a witness, another may know the handwriting of the supposed testator and the body of the will may be proven by him, but somewhere and by some witness each part must be shown to have been written by the supposed testator, but not necessarily all of it by any one witness.

The propounder called A. F. West, who testified he had taught school for six years and Berry Stone was one of his pupils, that he was in the banking business for twenty-two years and Stone deposited with him,

that he thought he was acquainted with Stone's handwriting but he did not recall having ever seen him write, but from handling his checks, deposits, etc., he felt he knew his handwriting. The court ruled he was a competent, or rather a qualified, witness, but it was with some misgivings, as is apparent from this which the court then said:

"He is propounding this will, and he has to prove it; if he proves it incompetently he will later rue it. * * * The question he wants to ask you is did you become while there in the bank and while handling checks which purported to he his * * * did you then become sufficiently acquainted with them to now recognize his handwriting if you were to see it?" Counsel then asked: "Mr. West, I will now ask you to examine this document and state to the jury whether or not in your opinion and judgment it is wholly in the handwriting of Berry Stone?" The witness answered: "My opinion is it is Berry Stone's writing." Counsel asked again: "What is your opinion as to whether or not that is altogether wholly in the handwriting of Berry Stone?" Witness answered: "It is." Then this occurred: "The appellant moves that each and every question of the questions and answers be excluded from the consideration by the jury, which motion the Court overruled, and the appellant excepts."

This was not error. A person may have become acquainted with the handwriting of another without ever having seen him write through a long course of business dealing with him, and the receipt of numerous letters and writings from him which in such business dealings the writer, having never questioned their authenticity, may be said to have impliedly admitted it. In Watson and Oliver v. Cresap, 40 Ky. (1 B. Mon.) 195, 36 Am. Dec. 572, we said:

"We are also equally clear that the testimony adduced to prove that the signature to the bill was not the handwriting of the President of the Bank, and that the bill was a counterfeit, was competent. If the testimony of a casual correspondent may be received as competent to prove handwriting, much more may the testimony of a merchant who has been in the habit, in the course of his

business, of receiving, scrutinizing, and paying away genuine bills upon the same bank, be received as competent.''

See, also, Rawlins v. Com., 13 Ky. Op. 918; Richie v. Com., 70 S. W. 629, 24 Ky. Law Rep. 1077; and Hawkins v. Grimes, 52 Ky. (13 B. Mon.) 257.

We find this in 11 R. C. L. p. 620, sec. 41:

''A class of opinion evidence very frequently before the courts is that as to handwriting. The precise question usually is whether a certain signature or writing was in fact written by the one whose writing it purports to be, or by someone who is charged with writing it. The disputed writing may be one the authorship of which is the principal fact in issue, or it may be merely a fact of evidential value. The evidence naturally offered on such a question is that of persons who are familiar with the handwriting of the alleged writer; and the opinion of such persons is universally recognized to be admissible, even though they are in no sense handwriting experts. * * * Of course, when the witness' vocation is one which requires him constantly to scrutinize and pass on handwriting, his testimony will be so much the more valuable. But the difficulty of defining the exact amount of acquaintance with the handwriting in question is so great that it has often been stated that anyone may give his opinion who has seen the supposed author write, or who has received letters or other writings from the supposed writer, or has had occasion to see them in the ordinary course of business, under such circumstances as create a presumption that they were really written by him, or has seen writings acknowledged by him to be in his own handwriting. Indeed, it has been declared that a witness who has never seen the person in question write, must have read papers expressly or by implication acknowledged by such person to be genuine.''

See, also, 22 C. J. p. 779, sec. 880.

What we have said as to the testimony of this witness, West, applies to the testimony of a number of others. The weight of the testimony of these witnesses

must vary in exact ratio to their opportunities to become acquainted with and to know the handwriting of the alleged testator.

There are some other bits of evidence here and there to which objection was made, but we do not regard its admission as prejudicial, nor do we find any evidence offered by appellant, the exclusion of which was prejudicial.

W. G. Patrick testified he knew the handwriting of testator, yet when presented with a genuine piece of testator's writing he did not recognize it. This impaired the value of his testimony, but we cannot say it made it inadmissible. Indeed, it would be most unusual if a witness should prove to be infallible and correctly identify every paper offered him. The same is true of the testimony of Mr. West.

Some witnesses testified they knew the handwriting of the supposed testator from having received letters from him but were unable to produce the letters so received. The production of the writings so received is not a necessary prerequisite to the admission of the testimony of such a witness. His testimony is admitted because he testifies he knows the handwriting of the supposed testator, he then examines the supposed will and testifies it was witten by the supposed testator, and this he says, not because he saw it written, but because the witness has compared the handwriting in the supposed will with the mental picture; the exemplar of the handwriting of the supposed testator then existing in the mind of the witness.

The production of specimens of the supposed testator's writing would add to the credibility of the testimony of the witness, it might cause a juror to think, "He knows what he is talking about, see he has a letter with him," but it does not add to the admissibility of the testimony of the witness. See 10 R. C. L. p. 993, sec. 180.

There is in this record a great mass of writing admitted to have been written by the supposed testator, but we are not supposed to retry this case. Our duty is limited to the correction of the errors, if any. We do not find that there was any prejudicial error in the admission or rejection of evidence.

## Does the Evidence Support the Verdict?

Thirty-eight witnesses testified, some of whom were recalled a time or two; they are about equally divided between the parties. We have no direct testimony, from any one who saw him do it, that Berry Stone wrote any part of this paper. The best evidence we have, that of the parties acquainted with his handwriting, is about equally divided between the two litigants. Some of the witnesses for the contestant were contestant's own children, and necessarily their testimony must be affected by their interest. See Keltner v. Keltner, 45 Ky. (6 B. Mon.) 40. One witness of special skill in handwriting testified for each of the parties. These skilled witnesses used a blackboard and illustrated their testimony by drawings upon it, which of course could not be brought here, so we cannot say we have here all the evidence that was before the jury. It may be those blackboard drawings were the cause of this verdict. In Polley v. Cline 263 Ky. 659, 93 S. W. (2d) 363; we cited the case of Kentucky Traction & Terminal Co. v. Humphrey, 168 Ky. 611, 182 S. W. 854, to show that this character of evidence is not favorably regarded by the courts, though it did receive a more favorable view in the Varney Case (D. C.) 22 F. (2d) 230.

The asserted finding of this paper and the activity of one witness, whose product, there is in the evidence some slight indication, this will may be, have caused us to examine this evidence carefully, for we note this in Osborn on Question Documents (2d Ed.) p. 15:

"Interesting papers of this class are often brought forward * * * which it is usually claimed were found in some strange place or under peculiar conditions, and these circumstances are, as a rule, minutely detailed. These stories often are surprisingly alike in many ways and alone often are sufficient to arouse a strong suspicion that the document is not genuine."

However, in spite of our suspicion so aroused, we cannot find any warrant for saying this verdict is not supported by the evidence. Therefore the judgment is affirmed.