## F. Pena *v.* The Cities of New Orleans and Baltimore.

The following document, written, signed and dated in the hand of John McDonogh, held to be valid as his olographic will or as a codicil thereto:

"$100,000.                                    New Orleans, January 25th, 1848.

Four years from and after my death, I hereby authorize and direct (and will) my executors to pay unto Francis Pena one hundred thousand dollars.                    John McDonogh."

But this legacy not being within the terms of Article 1624 of the Civil Code, does not bear interest before the suit brought for the same.

Conceding the suspicion which may attach to the appearance of a small scrap of paper as the title to a large fortune, and the delay in the person who sets it up four years after the testator's death as a codicil to his will, yet these suspicions should not counterbalance the testimony of numerous and uncontradicted witnesses who sustain the genuiness of the document.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *Benjamin, Bradford & Finney*, for plaintiff. *C. Roselius* and *George Eustis*, for defendants and appellants.

BUCHANAN, J. The answer of the defendants specially denies that the paper which the plaintiff alleges and pretends to be the last will and testament of John McDonogh, is a genuine instrument, written, dated or signed by the said McDonogh.

Six witnesses, *Grivot, Roselius, Mazureau, M. Barnett, senior, M. Barnett, junior*, and *Faures*, testify that they are well acquainted with John McDonogh's handwriting, and have seen him sign his name. They believe the instrument sued upon to be wholly in the handwriting of John McDonogh.

No witness has testified to a contrary belief.

The genuineness of the document appears, therefore, to be established.

The answer also denies that the document sued upon, if genuine, would be valid in law as a last will and testament.

That document is of the following tenor:

"$100,000.                                    New Orleans, January 25th, 1848.

Four years from and after my death, I hereby authorize and direct (and will) my executors to pay unto Francis Pena, one hundred thousand dollars.

John McDonogh."

The provisions of the law of Louisiana upon the form of testamentary dispositions, so far as applicable to the present case, are found in Articles 1563 and 1581 of the Civil Code.

Art. 1563, paragraph 3. An act of last will, by which an individual disposes of his property, *or of part thereof*, in any manner whatsoever, whether he has instituted an heir or only named legatees, whether he has or not charged any

one with the execution of his last will, is considered as a testament, if it be, in other respects, clothed with the formalities required by law.

Art. 1581. The olographic testament is that which is written by the testator himself. In order to be valid, it must be entirely written, signed and dated by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of the State.

The document in question is an act of last will—for it is intended to be operative, only four years after the signer's death. It disposes of a part of the signer's property, namely, a specific sum of money. It disposes of that sum in favor of a particular person, the plaintiff. This is equivalent to a nomination of that person as legatee of that sum. The executors of the signer (executors appointed by an anterior will), are charged with the execution of this disposition.

Finally, being written, signed and dated entirely by the hand of John Mc-Donogh, it is valid as his olographic will or codicil.

The argument of the counsel of defendants has turned principally upon circumstances, which, as they contend, create a presumption that the document sued upon is not genuine. Those circumstances are, the declarations of John McDonogh, made to various persons, at many times, as to certain peculiar views of that gentleman upon the subject of legacies to individuals; the inconsistency of this large legacy with the preëxisting will of John McDonogh; the tardy disclosure by plaintiff of the possession of so important a document; and the condition and appearance of that document as it is presented.

1 and 2. It would seem that John McDonogh frequently expressed the opinion to his intimate friends that more good arose from testamentary devises to classes of persons, than to individuals; and that this was the leading idea of his will, dated in 1838, and reported in full in 8th Annual, page 174, there can be no question. But we can hardly reject a posterior will merely for inconsistency with a previous one, nor even for inconsistency with expressed sentiments of the testator. Ten years had elapsed between the date of the two testamentary dispositions, and McDonogh might have had reasons, which he did not choose to avow, for making an exception to his general rule of action, in favor of this plaintiff.

A more serious difficulty is presented by the two last grounds of argument. It is truly surprising that the plaintiff, a resident of New Orleans when *John McDonogh's Succession* was opened, and his executors qualified, should have never communicated to those executors the fact of his possession of a document so important to himself, and which upon its face was directed to those executors; that he should have suffered those executors to go out of office; the four years for the payment of his legacy, and two years longer, after *McD.'s* death, to elapse, without disclosing to any mortal the existence of such a document. Not a syllable of explanation is offered by the plaintiff of this delay in urging his claim.

Again, the document which has been brought up with the record for our inspection, does not appear to have been carefully kept, as one might naturally expect; but is discolored, as if by moisture, creased as if worn in the pocket for a long time, and in parts almost illegible.

We would have been better satisfied with some evidence explanatory of the conduct of plaintiff, so little in accordance with the usual springs of human action, at least with that most powerful of all, self-interest. We concede the

suspicion which may attach to the appearance of this small scrap of paper as the title to a large fortune. But, after all, suspicions are not permitted to counterbalance, in the judicial mind, the testimony of numerous and uncontradicted witnesses. It is in the recollection of some of us, that a dirty fraction of a half sheet of foolscap, was the vehicle for the devise of the large fortune of the late Chief Justice Martin. A similar eccentricity in *John McDonogh*, which made, in his case, a bit of paper, barely large enough for a promissory note, the repository of an olographic will, may have communicated itself to the beneficiary of that will, and been the cause of his concealing its existence until six years after the death of the testator. We do not find in these circumstances sufficient reason for reversing the judgment of the District Court.

The appellee has filed an answer to the appeal, praying an amendment of the judgment, by allowing interest from the 26th October, 1854, instead of from judicial demand, as awarded by the District Judge.

The appellee is not entitled to the amendment prayed for. Interest is only due upon particular legacies, before a suit brought for the same, in the two cases provided in Article 1624 of the Code. The legacy under consideration is not within the terms of that Article. See case of *Fletcher's Succession*, lately decided.

Judgment affirmed, with costs.