## Heirs of S. W. Philbrick *v.* Isabella Spangler.

The presumption arising from facts which tend to establish the *status* of marriage is not conclusive, but subject to be rebutted by testimony negativing the fact of marriage.

The declarations of the parties, to the effect that they had never been married, will, under certain circumstances, outweigh the presumption of marriage arising from the fact of the parties having lived together as man and wife, and having been publicly recognized as such.

Where it is charged that the legatee was the concubine of the testator, such a legacy being in contravention of public policy, the legal heirs of the testator will be permitted to prove an illicit connection between the deceased and the legatee.

An olographic will written in *pencil* is valid.

APPEAL from the Second District Court of New Orleans, *Morgan,* J.
C. B. *Singleton*, for plaintiffs. Geo. S. *Lacey*, for defendant and intervenor, appellants.

Voorhies, J. The deceased, *Samuel W. Philbrick*, left a will, in the olographic form. The instrument reads as follows:

" Should I die during this sickness, *Mr. George S. Kausler* will send to my father, *Samuel Philbrick*, Skowhegan, Maine, one thousand dollars, the balance of my property to be given *Isabel Spangler*, I call her my wife."

" Lafayette, December 2d, 1852."

(Signed)                     " Samuel W. Philbrick."

The validity of this will is attacked by the legal heirs of the testator on the grounds, 1st, that it was written in pencil; 2dly, that the testator was not in his right mind when the will was written; 3dly, that it was made subject to a condition which did not happen; and 4thly, that *Isabella Spangler* was the concubine of the deceased, and consequently, incapacitated from receiving over a tenth part of the movables of the estate. There is, besides the demand in nullity or reduction of the last will and testament of the deceased, a claim against *Isabella Spangler* for the sum of four thousand dollars, being the value of property alleged to have been diverted by her from the succession.

· After the institution of this suit, *Isabella Spangler*, who, after the death of *Samuel W. Philbrick*, had married *W. H. Nelson*, departed this life, leaving as her universal legatee the latter, who thereupon intervened in this case.

The evidence adduced on the trial proves, that *Samuel W. Philbrick* and *Isabella Spangler* lived together for a period of over ten years; that they were considered in the community as man and wife; that he held her up publicly and

constantly, during all that time, as his wife; that they visited respectable families, and had their visits returned; that they sojourned, on two different occasions, in the testator's family, in the State of Maine, and did so as husband and wife; and finally, several of the witnesses, who were more or less intimately acquainted with the parties, and who testify to her good conduct and behavior, state that they never heard the fact of their being a married couple questioned before they were summoned to appear as witnesses in this case. The testator and the legatee had, therefore, up to the time of the former's death, publicly, constantly and unequivocally possessed the *status* of marriage.

The evidence, therefore, creates a presumption that the parties were married; but this presumption is not conclusive, but is subject to be rebutted. *Holmes* v. *Holmes*, 6 La. 470; *Beaulieu* v. *Ternoir*, 5 An. 480; *Hobdy* v. *Jones*, 2 An. 944; *Cole* v. *Langley*, 14 An. 770.

The plaintiffs introduced evidence to prove that the testator and the legatee were never married. Objection was raised by the defendant to their right, as legal heirs of the testator, to prove an illicit connection between the deceased and the legatee. This objection is not well taken. If the latter was the concubine of the testator, the legacy was in contravention of public policy. Proof was, therefore, properly admitted to show that fact: otherwise the prohibition of the law were a dead letter.

Three witnesses on the part of the plaintiffs gave their testimony, negativing the fact of a marriage having ever taken place between *Samuel W. Philbrick* and *Isabel Spangler*. But, before considering their evidence, it is proper to notice the bills of exception taken by the defendant to the ruling of the inferior court, as to their competency. These witnesses are, *W. G. Mullen*, the curator of the estate of *Samuel W. Philbrick*, deceased, *A. W. Bosworth*, the agent of the absent heirs, and *George S. Kausler*, the testator's partner.

*W. G. Mullen*, in his capacity of curator, has no interest in the result of this suit: his liabilities are the same, whether he is to render an account to the plaintiffs or to the defendant. The determination of his rights and liabilities is not involved in the decision of the present controversy.

*A. W. Bosworth*, in his capacity of agent of the plaintiffs, has no legal interest in the decision of this cause: he has no interest dependent upon the result.

The interest which the defendant conceives that *George S. Kausler* has in this controversy, arises from the fact that the witness is joint owner of a slave with the estate of *Samuel W. Philbrick*, and that there is an agreement between the plaintiffs and the witness as to the transfer of the slave to the latter at a specified price. This might, according to circumstances, be a matter going to the credibility of the witness, but certainly not to his competency. These witnesses state, that the deceased, *Philbrick*, and *Isabella Spangler*, have never been married; that their knowledge of this matter was derived from the declarations of these parties, made, not in the course of passing conversations, but when the subject of these conversations related to her interests, as liable to be affected by the death of *Samuel W. Philbrick*.

It is true, that verbal admissions ought to be received with great caution, the more so when the party making them is dead at the time of the trial. "But," says Greenleaf, "where the admission is deliberately made, and precisely identified, the evidence it affords is often of the most satisfactory nature." Greenleaf, § 200. Of this character are the declarations of the deceased *Samuel W. Philbrick* and *Isabella Spangler*. The witnesses, who testify to these admissions, are

PHILBRICK
v.
SPANGLER.

not a little corroborated by the peculiar phraseology of the will in question. The testator does not devise his property to his wife, *Isabella Spangler,* but says : *" the balance of my property to be given Isabella Spangler, I call her my wife."* We consider the presumption of marriage destroyed by the evidence on the record.

With regard to the other objections raised against the validity of the will, it is proper to remark, that they have not been urged on the trial before this court. The reasons given by the District Judge in overruling them are satisfactory.

With regard to the claim of $4000, there is no evidence in the record. It is true, the District Judge rejected the parol proof tendered by the plaintiffs to contradict the contents of an authentic transfer of slaves by the curator of the estate to *Isabella Spangler ;* but this ruling was correct. C. C. 2233, 2255, 2415.

Judgment affirmed.