HEIRS OF BENJAMIN WILLIAMS *v.* MARY ANN HARDY, or WILLIAMS.

Where a testament purporting to be of the olographic kind, is not entirely written by the testator, it is null.

Where a party enters into a second marriage, children of the first surviving, he is incapable of giving to his intended spouse more than one-fifth of his estate in usufruct.

Where the community has been waived, by the marriage contract, between husband and wife, the law does not, in that case, create the presumption that the property belongs to the husband.

APPEAL from the District Court of the Parish of Livingston, *Wilson,* J. *H. Duncan,* for plaintiffs and appellants. *A. Hennen,* for defendant.

MERRICK, C. J. This suit is brought by the plaintiffs to be recognized as heirs of the deceased, *Benjamin Williams,* to correct the inventory, and to annul an alleged olographic will made in favor of defendant. The suit was commenced by sequestration, and property to the amount of $2,149, not inventoried, was sequestered.

The defendant answered, setting up a marriage contract, in which the testator acknowledged himself to owe the defendant $1,000 for money lent at various times ; she sets up an olographic will in her favor ; alleges that she is owner of the property sequestered ; that the inventory is a true one ; that she was proceeding, as executrix, to settle up the estate as far as the assets would go ; and reconvenes and claims judgment against the plaintiffs, absolutely, as heirs, for the $1,000 acknowledged to be due her by the marriage settlement.

The case was *tried by a jury* and a judgment rendered against the plaintiffs, on their demand *to be recognized as heirs,* and to annul the will, &c., and in favor of the defendant for the property sequestered, and also in her favor and against the plaintiffs jointly, for the sum of one thousand dollars. This judgment, we may observe in passing, is erroneous on its face.

If the plaintiffs are bound to the defendant *as heirs,* their right to inherit the estate of their ancestor cannot be refused them.

The will was admitted to probate as an olographic will. It was not entirely written by the testator, and is null. Indeed the counsel for the appellee says, his client claims nothing under it. The judgment was also erroneous in maintaining the will.

The marriage contract is contested by plaintiffs, and they allege it to be fraudulent. It is a singular instrument.

The first clause states, that the intended husband brings into the marriage, *no moneys, property or estate* whatever, but acknowledges himself to owe his intended wife " *one thousand dollars cash received* from her at various times."

The second declares that the intended wife brings in, " as her marriage portion or dower," the $1,000 due by her intended husband.

The third stipulates, that said sum " *shall constitute and become the paraphernal and dotal property and funds*" of said intended wife, and that there shall be no community of acquets and gains.

This marriage contract must be examined in relation to the state of facts existing when it was executed. Neither the subsequent meritorious conduct of the wife, and her capacity for business, nor the infirmities of her husband subsequent to that period, have any legal bearing upon the issue in this case. After her marriage, she had no claim upon her husband for services rendered him during its existence.

The intended marriage being a second marriage, children of the first surviving, the testator was incapable of giving to the defendant more than one-fifth of his estate in usufruct. C. C. 1745 ; 13 An. 143, 245.

· The disparity between the parties might, itself, induce the suspicion of a desire to evade this provision of the law. But the proof, we think, shows satisfactorily that the testator, if indebted to the defendant at all, was indebted only for a small sum for wages as a servant.

The proof shows, that the deceased, who had been in the customhouse in this city, was appointed keeper of the Pass Manchac Light-House in 1850, and that he kept the light-house from 1850 to 1858, and that he was allowed a salary of $600 for himself, and $300 for an assistant. It is shown that he was a steady man, and could have saved money on this salary ; that when he went there in 1850, (his first wife being then alive,) to take charge of the light-house, he brought with him a negro woman and " a lot of very good household furniture." The marriage with defendant took place the 12th of May, 1851. In the interval, then, the testator must have lost his first wife.

The proof shows that the defendant was, previous to her marriage, a servant at a boarding house in this city, and that her wages were worth twelve or fifteen dollars per month. She went from the city as a servant, into the employment of the testator at the light-house. When she went over, she took nothing except her wearing apparel. She left the testator some time after, and returned to the city. He wrote for her to come back. She stated to a witness that the testator owed her fifty dollars, and she would go back and work a while on that account. She is not known to have had any other resources but her labor.

There is, however, some discrepancy in the testimony, as to the time when the defendant went into the employment of the deceased ; one of the witnesses speaks of it in 1852 or 1853. It must have been between 1850 and May 12, 1851, as the same witness says, it was before defendant's marriage.

Under this state of facts, the presumption is created, that the sum mentioned in the marriage contract was a fiction. If there were anything real in it, and

the defendant had loaned the testator money prior to her marriage, it ought to have been shown, in order to rebut the plaintiffs' proof. The judgment against the heirs for the sum of money specified in the marriage contract, must also be reversed.

There is reason also to suspect, that the negro man purchased in this city in July, 1856, in the name of the defendant, as her separate property, might have been paid for out of the annual salary of the testator. He was in the receipt of $900 per annum, and the wife was in the receipt of nothing. Yet, at the end of eight years, his estate consists of a steer, a gun, and some household furniture, all valued at $215, whilst the property acquired and claimed by the wife, amounts to $2,400, besides her judgment against the heirs!

But as there is no community between the deceased and the defendant, we shall not disturb the finding of the jury as to the title to the slave *Simon*, for the law does not create the presumption in such case, that the property is that of the husband. If the wife has used the funds of the plaintiffs' ancestor in making the purchase, it can be shown in adjusting any claim which we may reserve her in this decree. Should she claim under the Act of 17th of March, 1852, the plaintiffs would, perhaps, have but little interest in making the investigation, for the value of the slave in her hands, would lessen her claim by so much upon the estate.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed; and we do now order, adjudge and decree, that the plaintiffs be recognized as the legal forced heirs of the said *Benjamin Williams*, deceased. It is further ordered, adjudged and decreed, that the said pretended olographic will, bearing date October 11th, 1856, be declared null and void, and that the said *Benjamin Williams* died intestate. And it is further ordered, adjudged and decreed, that a supplemental inventory be made of the real estate in the possession of the deceased at the time of his death, and that all of the property sequestered, (except said slave *Simon*, and such other property as had been already inventoried,) also any other property belonging to the deceased at the time of his death, which may be found. And it is further ordered, adjudged and decreed by the court, that the reconventional demand of the defendant be rejected, and judgment rendered thereon in favor of the plaintiffs, the right being reserved to the defendant to claim of the succession of the said *Benjamin Williams*, deceased, any sum which she may be able to establish by proof, for money lent or wages due her prior to her said marriage; also, without prejudice to any right she may have under said Act of the Legislature of 17th of March, 1852, and, also, without prejudice to the plaintiffs' right to claim for any funds of the said *Benjamin Williams*, deceased, used by the defendant in the purchase of the said slave *Simon*. And it is further ordered, that the defendant pay the costs of both courts.

LAND, J., absent.