80 661
ₒ113 104.

Case 119—ORDINARY—January 30, 1883.

## Toebbe, &c., v. Williams, &c.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. A will wholly written and signed by the testator is a complete will, although he may have thought to the contrary, by mistake of law.
2. In the absence of evidence otherwise, the law presumes that the date of the paper is the date of the testator's subscription, and that all

Toebbe, &c., v. Williams, &c.

alterations, interlineations, and erasures were made after its execu-
tion.

3. Evidence of verbal statements by the testator, after making his will
according to the forms of law, that he has made no will, do not
amount to a revocation, and are of little value. The jury should
have been so instructed.

BRECKINRIDGE & SHELBY AND BUCKNER & ALLEN FOR
  APPELLANTS.

1. The legal presumption is that all instruments, in the absence of evi-
dence to the contrary, are executed on the day they bear date. (1
Taylor on Ev., sec. 137; 2 Ex. Rep., 191, 6 *Ib.*, 716; 4 M. & W.,
312.)

2. And that all erasures or interlineations on the face of a will are pre-
sumed to have been made after its execution. (71 E. C. & L., 748;
40 Eng. Ch. Rep., 136; 4 Moore's Priv. Conn. Ca., 449; 1 Greenleaf
on Ev., sec. 33; 1 Taylor on Ev., secs. 94, 97.)

3. The instructions given were misleading. (1 Redfield on Wills, sec.
3, 39.)

BECK & THORNTON, T. N. ALLEN, AND J. H. MULLIGAN FOR
  APPELLEES.

1. We contend that the question is, whether the alleged will was, in the
decedent's mind, a completed paper which he intended should, in its
then condition, operate as a will.

2. When the facts show that the paper was not, in the mind of the writer,
a completed instrument, it is not his last will. (1 Jarman on Wills,
141; *Ib.*, 137, 138; 1 Add., 154; English, *in re*, 3 Ser. & T. R., 586;
11 Jar., N. S., 570.)

3. The instruction that "whether, according to his mind, it was a com-
pleted paper or not, if he intended it as his will, and had complied
with the forms of law by writing and signing it himself before the
pencil suggestions were made, it is. his. will, and ought to be pro-
bated," is not law, and is more favorable to appellants than they
are entitled to. (1 Eng. Eccles. Rep., 18; 2 *Ib.*, 62; 2 Phill., 177;
1 Merrivale, 503; 14 Md., 507; 3 *Ib.*, 143; 2 Met., 266; 4 Ves. Jun.,
186; 5 *Ib.*, 23; 1 Gratt., 454; Red. on Wills, 240; Jones v. Jones, 3.
Met., 108; *Ib.*, 266; Farmer v. Gregory, &c., 78 Ky., 475.)

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

Timothy Daly wrote his will on four pages of paper form-
ing one sheet, and signed his name at the bottom of each
page.

Afterwards, he went to an attorney and said: "Here is my will," and asked him to suggest such verbal corrections as he thought advisable.

The attorney read it over, and made four unimportant suggestions in pencil between the lines of the pen and ink writing and in the unoccupied space at the end of lines, there being no blanks in the will.

Besides the pencil suggestions, the attorney ran the pencil across the words "she will want it," but left them plain and easily to be read.

He also told Daly that a will wholly written by the maker did not require any witnesses, but that a will not so written did require witnesses, and gave him a form of attestation, written in pencil, on a scrap of paper which Daly took away with him.

The will was found after his death in a box under his bed.

It was in wrappers on which was written the words "Old will," "Will," "Will and map," "Winchester account," and an old form or unfinished will and the Winchester account were with it in the wrappers.

Following Daly's name, on the last page, is an attestation in form like the one written by the attorney, but not signed by any witness.

The probate of the paper was contested on the ground that it was not a completed will.

Upon a trial of that issue the court rejected all instructions asked by the parties, and instructed the jury as follows:

*First.* If the jury believe, from the evidence, that the writing in pen and ink, which is presented as the last will of Timothy Daly, was wholly written by him, and was subscribed by him with the intention of making it his will; and

was, according to his *mind* and intention, a completed paper before any of the pencil alterations were made in it, the jury should find the writing propounded to be the last will of Timothy Daly.

*Second.* Unless it was so written and subscribed by him, with said intention and *understanding*, before said pencil alterations were made, the jury should find that it is not his will.

The third instruction need not be quoted, as it is unobjectionable.

The instructions one and two above mentioned are erroneous, and did not present the correct law of the case to the jury.

If the paper was wholly written and subscribed by Daly, with the intention of making it his will, it was his will, although he may not have thought it was a completed paper, by reason of a mistaken notion on his part that the law required witnesses to such a paper. It was a complete and lawful will when he presented it to the attorney for verbal suggestions.

He did not ask the attorney to *make* the corrections, he only asked him to *suggest* such verbal corrections as he thought advisable, and there is no proof that Daly ever adopted any of the suggestions as a part of his will, hence the paper must be treated as if the suggestions had not been made, if Daly intended the paper, as he had written and signed it, to be his will.

And whether, according *to his mind*, it was a completed paper or not, if he intended it as his will, and had complied with the forms of law by writing and signing it himself before the pencil suggestions were made, it is his will, and it ought to be probated, notwithstanding he sought the

verbal suggestions, which he did not adopt, and erroneously believed that the attestation of witness was necessary, or contemplated the possibility of a change of mind, when he might be unable to write or desire some other person to write a will for him when the attestation form would be important.

The italicized words "*mind*" and "*understanding*," as used in the quoted instructions, were in conflict with the view of the law above expressed, and ought not to have been employed in the instructions as they were.

In the absence of evidence to the contrary, the law presumes that the date of the paper is the date of the subscription, and that all alterations, interlineations, or erasures which appear upon its face were made after its execution, and the jury should have been so instructed, because these are presumptions of law, and not mere presumptions of fact or illogical deductions in the popular sense.

It is true they are disputable presumptions of law, and admit of evidence to overturn them; but such presumptions should not be confounded with presumptions of fact, and should always be explained to the jury, whose duty it is to give full weight to such presumptions. (Taylor on Evidence, section 97; Greenleaf's Evidence, section 33 *et seq.*)

Evidence of verbal statements made by the testator, after making his will according to the forms of law, to the effect that he has not made a will, do not constitute a revocation and possess but little value, and when permitted to go to the jury they should be instructed that such statements do not tend to prove revocation, and furnish no light in construing the written acts of the testator. (Section 10, chapter 113, General Statutes.)

Wherefore, the judgment is reversed, and cause remanded, with directions to award to the appellants a new trial.