ESTATE OF JOHN FAY, DECEASED.

[No. 26,323; decided March 12, 1902.]

An Olographic Will Which by Mistake Bears a Date at least twenty-eight years prior to the time of its execution should be denied probate. [*See note at end of opinion.*]

Louis S. Beedy, for the proponents.

Bart Burke and Chas. J. Pence, for the contestants.

COFFEY, J. This is a proceeding for the probate of a certain instrument alleged in the petition· to be the last will and testament of John Fay, deceased.

The proposed will is olographic in form, was entirely written, dated, and signed by the hand of the testator himself. It bears date "May twenty-fifth eighteen hundred and fifty-nine."

This alleged will makes certain bequests and devises to the surviving wife and children of the deceased, naming them, and, among others, to a daughter, Mary Montealegre.

It appears that at the date of said will the said testator was unmarried and none of his said children was yet born; that Mary Montealegre, his daughter, was married on the thirty-first day of January, 1887, to Charles F. Montealegre, from whom she was divorced on the twenty-ninth day of July 1890, and by the provisions of the decree of divorce she was authorized to resume her maiden name of Mary Fay. She died March 29, 1900, nearly two years prior to the death of the testator, leaving her surviving no child or children or lineal descendants. Luke Fay, the oldest son of said deceased, was born February 28, 1861, nearly two years subsequent to the date of said will.

It is apparent, therefore, that the will in question could not have been executed earlier than January 31, 1887, the date of the marriage of his daughter as aforesaid, and probably not later than the decree of divorce rendered July 29, 1890, when she resumed her maiden name, as it is not likely that after such date the deceased would have named her in his will as "Mary Montealegre."

The question to be determined is, Was this instrument duly executed as an olographic will?

This will bears a date at least twenty-eight years prior to its execution. Does this comply with section 1277 of the Civil Code? That section is as follows: "An olographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this state, and need not be witnessed."

That a date is one of the requisites of an olographic will, and that such date must be written by the testator himself is the settled law of this state.

In Estate of Martin, 58 Cal. 530, there was no date to the will, which was olographic, and it was held invalid, although it contained a declaration that the testator was "of the age of sixty years."

In Estate of Rand, 61 Cal. 468, 44 Am. Rep. 555 and in Estate of Billings, 64 Cal. 427, 1 Pac. 701, it was held that an olographic will in which the date was partly written and partly printed was invalid.

In Estate of Behrens, 130 Cal. 416, 62 Pac. 603, it was conceded that the olographic will in question in that case, bearing date in the writing of the testator of "Febr. 12, '98," was sufficiently dated under the code.

In Estate of Lakemeyer, 135 Cal. 28, 87 Am. St. Rep. 96, 66 Pac. 961, it was held that the words and figures, "New York, Nov. 22, '97," used in an olographic will, constitute a date, and that the will was sufficiently dated.

In no case reported in this state or elsewhere have I been able to find the question involved in the case at bar decided. Its solution, however, does not seem to me to be difficult. It was evidently the intention of the legislature that an olographic will should not only be dated, but that it should state the true date of the execution thereof. In Estate of Martin, 58 Cal. 530, the court say:

"It is claimed that the dating of a will is a mere formal matter, not absolutely necessary. We do not think so. The legislature has seen fit to require three things to concur, for the execution of an olographic will, viz.: That it be written, dated, and signed by the hand of the testator. We

are not at liberty to hold that the legislature intended any one of these requirements to be of any greater or less importance than the others. If we may omit one, why not either of the others?

"The paper is not aided by the declaration contained in it, of the age of sixty years. It does not appear in the paper when he was of the age of sixty years. It may have been one day before his decease; it may have been ten years."

The language of the court above implies that the will must not only be dated, but must bear the date of its execution; and this in reason ought to be so. The word "date" is defined in the Universal Dictionary as follows: "1. The formula appended to a letter, deed, etc., to denote the year, month, and day when such letter or deed was signed or executed." Webster defines the word "date" thus: "That addition to a writing which specifies the year, month and day when it was given or exercised."

There are several reasons why the correct date should be stated in olographic wills. Some of them are noted in the case of Succession of Robertson, 49 La. Ann. 868, 62 Am. St. Rep. 672, 21 South. 586, as follows:

"The law enjoins the date on two grounds: The first, the most essential, is in order that the precise date the testator made a disposition of his property may be known, rendering it possible to determine whether the testator had the capacity of giving at the date the testament was made. The second ground is secondary. If there are two testaments, it should be manifest which is the last, in case of opposing or incompatible dispositions."

In that case the date was partly written and partly printed, and the proposed will therein was held invalid by the court.

In Heffner v. Heffner, 48 La. Ann. 1088, 20 South. 281, other reasons were noted. The will in that case closed as follows: "Written, dated and signed in my own handwriting, on this —— day of June, 1893. William Heffner." The court in that case used the following language:

"When the code comes to prescribe the olographic testament, the notary, the witnesses and all forms of authentica-

tion are dispensed with, and the requirement is that such a will to have the validity must be wholly written, dated, and signed by the hand of the testator. The policy of the law to secure the true representation of the testator's wishes and guard against fraudulent wills is marked in the requisite of the testator's handwriting, including the expression of the date when he writes the paper and affixes the signature it bears. The date in the testator's handwriting is part of the evidence the law requires of the verity of the instrument. If the paper is forged, the date it must bear may furnish the means of detection, on any issue of the sanity the dates indicate and restrict the period of inquiry.''

If the instrument in the case at bar were admitted to probate as the last will of deceased, and within the time allowed by law, a contest should be inaugurated in which the mental capacity of the testator to make the same were challenged, at what point in time would the court direct or restrict the evidence to the point in issue? The sanity of the testator must appear at the time of the execution of the will: In re Wilson, 117 Cal. 269, 49 Pac. 172, 711.·

But no person living knows, so far as the court is informed, when this will was executed.· It was probably written between January 31, 1887, the date of the marriage of the daughter of the testator and July 29, 1890, the date of her divorce, but it may have been executed at any time after the former date and prior to the testator's death, which occurred January 28, 1902. Thus the court in the event of a contest would have to indulge in probabilities in fixing an event that might have occurred at any time within the period of fifteen years, or thereabouts.

In Heffner v. Heffner 48 La. Ann. 1088, 20 South. 281, the will must have been written within the month of June, 1893, yet the court declared it was not dated.

Again, there may have been another will, olographic or otherwise, of this testator. Suppose one were found bearing the subsequent date, yet executed prior to January 31, 1887. This would in fact be a prior will, but should such a will be admitted and produced, would it affect this will if admitted to probate bearing date as it does, ''May twenty-fifth eighteen hundred and fifty-nine''?

There are many reasons, it may be urged, why the true date of an olographic will should be stated; none whatever for a wrong date. Suppose the date of this instrument were A. D. 1000; this would be a technical compliance with the law, but would it meet the legislative intent incorporated in section 1277 of the code? Manifestly not. It would in effect be no date at all. And so in the case at bar, where almost thirty years must have intervened from the date of the instrument and the actual time of its execution: Fuentes et al. v. Gaines, 25 La. Ann. 85, 107.

In the case last cited it was sought to establish a lost olographic will. Referring to the testimony of the witnesses the court said: "In this case two witnesses, Harper and Bellechasse, state that the will was wholly written, dated and signed by Clark. Bellechasse states it was dated in 1813. Harper says it was dated in July, 1813. Is this sufficient? Is a statement, which is dated A. D. 1813, or July, A. D. 1813, to be deemed dated in the sense of the law? Certainly not, if the term "dated" is to be understood in its common and usual signification.

The reason why a wrong date to an olographic will renders the same invalid might be further illustrated and amplified, but it is unnecessary. If the motives and reasons given the cases cited are valid, and consonant with the legislative intent in enacting section 1277 of the Civil Code, then the instrument in the case at bar is certainly invalid, and the same should be rejected and probate thereof refused.

For the reasons and upon the authorities hereinabove recited and set forth the paper propounded is denied probate.

---

The *Principal Case* was reversed by the supreme court in 145 Cal. 82, 104 Am. St. Rep. 17, 78 Pac. 340. It is doubtful, however, whether the action of the supreme court in this case is consistent, either with its prior or subsequent decisions, on the law of olographic wills: See Estate of Martin, 58 Cal. 530; Estate of Billings, 64 Cal. 427, 1 Pac. 701; Estate of Plumel, 151 Cal. 77, 121 Am. St. Rep. 100, 90 Pac. 192.

#### OLOGRAPHIC WILLS.

An Olographic Will is One Written Entirely by the hand of the testator: Bouvier's Law Dictionary, title "Holograph"; Rapalje & Lawrence's Law Dictionary, title "Holograph"; Neer v. Cowhick, 4 Wyo. 49, 31 Pac. 862, 18 L. R. A. 588; note to Lagrave v. Merle, 52

Am. Dec. 591. Where, however, there is a codicil, the will and the codicil may be considered separately, and one be olographic and the other not. Hence to a will not in the handwriting of the testator, but duly witnessed and attested, there may be a codicil wholly in his handwriting, and therefore, though not witnessed, entitled to admission to probate as an olographic will: In re Soher, 78 Cal. 477, 21 Pac. 8.

A Paper is not Necessarily Entitled to Probate because it is testamentary in scope and wholly written by the testator and attested by his signature, for the whole subject of wills is under statutory control, and every paper presented as a will, whether olographic or not, must conform to the requisites of the statute. At the common law and by the earliest statutes upon the subject of wills witnesses thereto were not required, and an olographic will must have been good, though not witnessed, because it would have been equally good though not olographic, provided it had been executed by the testator. The necessity for witnesses resulted from the statute of 29 Charles II, chapter 3, relating to frauds and perjuries. It is believed that in each of the states of this Union statutes have been enacted without compliance with which no will is entitled to admission to probate or to otherwise be given effect as a will. Such being the case, the requisites of olographic wills must be found in those statutes, and where they prescribe any general rule respecting the execution and attestation of wills, such rule is equally applicable to olographic wills, and the fact that a will is wholly in the handwriting of the testator does not exempt it from the rule. Thus if a statute declares that all wills to be valid must be in writing, witnessed by two competent witnesses, and signed by the testator or by some person in his presence and by his direction, and that an olographic will may be proved in the same manner that other private writings are proved, wills of the latter class are still subject to the provision requiring witnesses: Neer v. Cowhick, 4 Wyo. 49, 31 Pac. 862, 18 L. R. A. 588. So a statute may impose limitations upon olographic which do not apply to other wills, or may provide that persons competent to make the latter are not competent to make the former. Thus, if a statute declares that a married woman may dispose of her separate estate by will without the consent of her husband, and may alter or revoke the will as if she were single, and that her will must be attested, witnessed and proved in like manner as are other wills, she cannot make an olographic will, though the same statute recognizes the general right to make such wills: Scott v. Harkness, 6 Idaho, 736, 59 Pac. 556.

Provided It Conforms to the Statutory Requisites in Other Respects, any writing or combination of writings (Estate of Skerrett, 67 Cal. 585, 8 Pac. 181) may constitute an olographic will, if it expresses, however informally, a testamentary purpose in language suffi-

ciently clear to be understood. Sums bequeathed may be stated in figures as well as in words: Succession of Vanhille, 49 La. Ann. 107, 62 Am. St. Rep. 642, 21 South. 191. ''To the validity of a will the law does not require it should assume any particular form, or that any technically appropriate language should be used therein, if the intention of the maker is disclosed and the distribution of his property at his death is designated.'' Hence a paper which commences with a synopsis of some of the principal events of the writer's life and a statement of property acquired by him, and that Charlie Webster has helped him to improve it, and concluding, ''I have requested my executors to give a clear deed for the property after my death to Maggie, his wife, and Charlie,'' is entitled to admission to probate as the will of the writer. The fact that he labored under a mistaken impression that it was necessary for his executors to make a conveyance does not prevent the writing from operating as his will: Webster v. Lowe, 107 Ky. 293, 53 S. W. 1030.

It will be seen from this that it is not necessary for the writer to know that the paper which he writes will amount to a will or otherwise fully accomplish his purposes. It is sufficient that he manifests his wish that, on his death, his property, or some part of it, shall go to another person by him designated: Outlaw v. Hurdle, 1 Jones (46 N. C.), 150; Estate of Knox, 131 Pa. 220, 17 Am. St. Rep. 798, 18 Atl. 1021, 6 L. R. A. 353. Nor is it necessary that such designation be so complete that parol evidence is not necessary to make it understood. Thus the words, ''Dear old Nance: I wish to give you my watch, two shawls, and also five thousand dollars,'' properly dated and subscribed by the writer, is an olographic will, and parol evidence is admissible to prove who is the person whom he designated as ''Old Nance'': Clarke v. Ransom, 50 Cal. 595. It is sufficient that the will merely states that the person named therein is the testator's heir if it is also indorsed in his handwriting as his will: Succession of Ehrenberg, 21 La. Ann. 280, 99 Am. Dec. 729.

A will may take the form of a direction to the testator's executors to pay the beneficiaries a sum specified at a future designated date: Pena v. Cities of New Orleans and Baltimore, 13 La. Ann. 86, 71 Am. Dec. 506. An olographic will may be contained in, or be a part of, a letter written by the testator to the beneficiary or to another: Buffington v. Thomas, 84 Miss. 157, 105 Am. St. Rep. 423, 36 South. 1039; Barney v. Hayes, 11 Mont. 571, 28 Am. St. Rep. 495, 29 Pac. 282; Alston v. Davis, 118 N. C. 202, 24 S. E. 15; or may consist of an entry in the testator's diary: Reagan v. Stanley, 11 Lea, 316.

Whether Directions for the Writing of a Will may of themselves constitute an olographic will is not free from doubt. A paper entitled, ''Directions how I want my will wrote,'' was denied admission to probate in Virginia, but the reasons for such denial were not stated by the court, and, as they may have related to the uncertainty of the directions thus referred to and the impossibility of

ascertaining from them, even if so admitted, what disposition was made of the property therein referred to, the case can hardly be regarded as authority on one side or the other side of the question: Hocker v. Hocker, 4 Gratt. 277. In Barney v. Hayes, 11 Mont. 99, 571, 28 Am. St. Rep. 495, 29 Pac. 282, 384, it appeared that the testator, after having executed a will which was duly attested by witnesses, married and subsequently wrote to his attorneys referring to his marriage, and stating, ''Now, what I want is for you to change my will so that she will be entitled to all that belongs to her as my wife. I am in very poor health and would like this attended to as soon as convenient.'' Application was made for the admission to probate of this letter as a codicil to the pre-existing will. It was conceded that the marriage had revoked the original will, but that if the letter could be admitted as a codicil, it republished the will, and that the will and codicil together constitute the last will and testament of the decedent. ''The whole gist of the case,'' said the court, ''therefore, is whether said letter was a codicil; that is, whether it was testamentary in character. The court submitted to the jury a great number of questions, which seemed to have included all matters of fact in the case. The court also required the jury to determine whether said letter was a codicil. The jury said it was.'' The trial court set aside this finding and held that the letter was not a codicil. Its action was reversed upon appeal, the appellate court holding that the words contained in the letter ''disclosed an animus testandi,'' that the reasonable construction of the letter was that the testator wished his wife to have a certain portion of his estate, and that no one could read the letter and be in any doubt as to what the decedent intended should be the disposition of his property to his wife, and that such intention being clear, the intent must not be ignored because the language was not technical:

**The Omission of Any of the Requirements of the Statute** in the execution of an olograph will not be overlooked on the ground that it is beyond question that the paper was executed by the decedent as his will while he possessed abundant testamentary capacity and was free from fraud, constraint, or undue influence, and there is no question of his testamentary purpose and no obstacle to carrying it into effect had his will been executed in the manner prescribed by the statute: Estate of Rand, 61 Cal. 468, 44 Am. Rep. 555; Succession of Armant, 43 La. Ann. 310, 26 Am. St. Rep. 183, 9 South. 50; Baker v. Brown, 83 Miss. 793, 36 South. 539; Warwick v. Warwick, 86 Va. 602, 10 S. E. 843, 6 L. R. A. 795. When, on the other hand, the paper offered has been executed in compliance with all the requisites imposed by the statutes, the courts will construe it on the same principles applicable to other wills, by seeking to ascertain, though its language is untechnical and ungrammatical, or words are omitted from it, what was the intention of the testator, and by giving effect to that intention, whenever lawful, and

thus capable of ascertainment. Therefore, the words, "Crolldepdro, february 3, 1892, this is to serifey that ie levet to mey wife Real and persnal and she to dispose for them as she wis," may be construed as if it had been written, "Corral de Piedra, February 3, 1892. This is to certify that I leave to my wife (my) real and personal (property), and she to dispose of them as she wishes": Mitchell v. Donohue, 100 Cal. 202, 38 Am. St. Rep. 279, 34 Pac. 614.

Though Certain Words Taken by Themselves have no apparent connection with other portions of the will, "the testatrix must be deemed to have written them with the intention that some effect should be given them, and that intention, so far as it can be gathered from the will itself and the circumstances under which it is executed, is to be ascertained by the court and effect given thereto accordingly. The order in which the words of a will are written is not determinative of the testator's intention, and under a well-recognized rule this order will be transposed if thereby the intention of the testator can be ascertained. So, too, a word that has been manifestly omitted and is essential to an understanding of the intention of the testator will be supplied": In re Stratton, 112 Cal. 513, 44 Pac. 1028.

A Will cannot be Olographic if Any Part of It is not in the Handwriting of the testator. The material with which it is written is immaterial. It may be in pencil as well as in ink: Philbrick's Heirs v. Spangler, 15 La. Ann. 46; Estate of Knox, 131 Pa. 220, 17 Am. St. Rep. 798, 18 Atl. 1021, 6 L. R. A. 353. But whether in ink or in pencil, every part of it must be in the testator's handwriting. Therefore, if a printed form has been used, so that the paper consists partly of such printing and partly of clauses written by the testator, no part of it can be admitted to probate as his olographic will: In re Rand's Estate, 61 Cal. 468, 44 Am. Rep. 555; Williams' Heirs v. Hardy, 15 La. Ann. 286. The same result must follow if the will is written on a printed letterhead, some of the words or figures of which constitute an essential part of the will: In re Billing's Estate, 64 Cal. 427, 1 Pac. 701; Succession of Robertson, 49 La. Ann. 868, 62 Am. St. Rep. 672, 21 South. 586. Perhaps, where it appears that all the words necessary to a completely executed will are in the handwriting of the testator, it may be admitted to probate, though it is proved that a few other words are in the handwriting of another: McMichael v. Bankston, 24 La. Ann. 451; and certainly this is true where the words are written preceding the will as a mere caption: Baker v. Brown, 83 Miss. 793, 36 South. 539.

The Question Whether an Olograph may, by Referring to Another Paper not in the handwriting of the testator, make it a part of the will is not free from doubt. In Virginia, where it appeared that a will had been drawn purporting to give all the testatrix's property to her sisters Margaret and Sallie, but had not been sub-

scribed or otherwise executed, and that the testatrix had written on the same sheet of paper, "As Margaret is dead, I give her share to my niece Lizzie Leigh Gibson," and followed this with her signature and the proper date, it was held that this latter writing could not be admitted to probate. It was conceded that had the original will been duly executed, the additional writing would have been entitled to probate as a codicil thereto, but a majority of the court was of the opinion that, as the original will was never duly executed, nor in the handwriting of the testatrix, the subsequent writing could not be admitted to probate as a codicil or otherwise: Gibson v. Gibson, 28 Gratt. 44. Where a paper purporting to be a codicil is executed with the formalities required of a will, or imports a reference to some already existing document regarded by the testator as his will, to identify that instrument and to interpret that reference as applying to it, all the surrounding circumstances may be shown: Estate of Plumel, 151 Cal. 77, 121 Am. St. Rep. 100.

Like doubt seems not to exist when the paper referred to is in the handwriting of the testator. In Estate of Skerrett, 67 Cal. 585, 8 Pac. 181, it appeared that the decedent signed and acknowledged a deed of gift to his sister which never became operative for want of delivery. Afterward he sent her a letter containing a copy of the deed, declaring that nothing further was necessary than to have it recorded, and that the property therein described would then become hers, and that he wanted her to know that she was provided for under all circumstances, and that if it should please God to call him away, she would have her own property to depend on, sufficient to make her independent while she lived. The copy of the deed, as well as the letter, was in the decedent's handwriting. It was held, reversing the judgment of the trial court, that the deed itself could not be admitted to probate as a will, because it contained no words of testamentary character, but that the copy and the letter, though neither in itself constituted a will, because the one was not testamentary in character and the other had no date, together as one complete document, clearly showed an animus testandi, and were entitled to admission to probate. Where a paper is written on the reverse side of an olographic will, not effectively executed, and is styled, "codicil," this word imports a reference to some prior paper as a will, and if executed with the formalities requisite for a will, makes good an invalidly executed olographic will written on such reverse side: Estate of Plumel, 151 Cal. 57, 121 Am. St. Rep. 100.

The Statutes Seem Unanimous in Requiring Olographs to be Dated; failure to respect this requirement is fatal to the will: In re Martin's Will, 58 Cal. 530; Fuentes v. Gaines, 25 La. Ann. 85; Heffner v. Heffner, 48 La. Ann. 1088, 20 South. 281. Though all the rest of it is conceded to be in the handwriting of the testator, if the date is proved to have been written by another, it must be denied admission to probate: Estate of Behrens, 130 Cal. 416, 62 Pac. 603. The

whole of the date must be in the testator's handwriting; and if he writes his will on a letterhead, using the figures printed thereon as part of the date and without considering such figures, the date cannot be known, the will cannot be supported as an olographic will: Succession of Robertson, 49 La. Ann. 868, 62 Am. St. Rep. 672, 26 South. 586. See, too, Estate of Plumel, 151 Cal. 77, 121 Am. St. Rep. 100.

**Abbreviations in the Date** are permissible if they are such as are in common use, easily understood, and leave no question of the date intended to be expressed. The words, "New York, Nov. 22/97," constitute a good dating. "In this case the expression under consideration is entirely unambiguous, and to everyone familiar with the usage of language it expresses the month, day and year as clearly as though these had been written out in full. It is, or rather, during the century just expired, it was, the common usage—universally understood—to designate the year by the last two figures of its number, omitting the figures designating the century": In re Lakemeyer's Estate, 135 Cal. 28, 87 Am. St. Rep. 96, 66 Pac. 961.

**A Dating is not Sufficient** to satisfy the requirements of the statute if it omits either the day, the month or the year: Fuentes v. Gaines, 25 La. Ann. 85; Heffner v. Heffner, 48 La. Ann. 1088, 20 South. 281; though when the existence of the will is in issue, as where its admission to probate as a lost will is sought, it is sufficient that the testimony shows that it was dated on some day in a designated month and year without specifying that day, if the inference, supported by the testimony, is that the day was specified in the will, though the witnesses testifying do not remember what it was: Gaines v. Lizardi, 3 Woods, 77 Fed. Cas. No. 7175. If a will in the handwriting of the testator closes with the proper dating and signing, and is followed by a further clause signed by the testator, but bearing no separate date, such clause will be presumed to have been written at the same time as the original will, and therefore the whole will be deemed to be properly dated: Lagrave v. Merle, 5 La. Ann. 278, 52 Am. Dec. 589. It is not essential that the date stated truly represented the time when the will was written or signed. An obvious mistake in this respect is not fatal to the will: Estate of Fay, 145 Cal. 82, 104 Am. St. Rep. 17, 78 Pac. 340. Whether his action is due to a mistake or not, the testator may adopt as the date of his will any date previously written by him: Estate of Clisby, 145 Cal. 407, 104 Am. St. Rep. 58, 78 Pac. 964.

**The Place Where the Date must be Written** is not prescribed by the statute, and hence it is not material in what part of the instrument it appears: Zerega v. Percival, 46 La. Ann. 590, 15 South. 476. It may follow the signature: Succession of Fuqua, 27 La. Ann. 271; or even be found on a piece of paper different from that which expresses the testamentary purpose and to which the signature of the

testator is written. Thus, where a testator sent to his sister what purported to be a copy of a deed conveying certain property to her, dated April 26, 1881, and acknowledged on the day following, inclosed in a letter bearing no date, but showing his intention that she should have such property at his death, such copy and letter were together held to constitute an olographic will, and to justify such holding, it was necessary for the court to adopt, and it did adopt, the date as expressed in such copy as the date of the olographic will: Estate of Skerrett, 67 Cal. 585, 8 Pac. 181.

Necessity for Signature.—At the common law a will of personal property in the testator's handwriting was good, though without his signature and unwitnessed, and in some of the states a common-law will is still sufficient in exceptional circumstances, as when made by a soldier in actual service, or a mariner at sea, for the purpose of disposing of his wages and personal estate: Leathers v. Greenacre, 53 Me. 561. The general rule, however, is that wills must be signed by the testator, and special reasons exist for the rule and its enforcement when the will is not witnessed. The absence of the testator's signature upon what is claimed as an olographic will must be regarded as fatal, except in cases where the common law has been left in force as to soldiers and sailors.

The Statutes Requiring the Signing of Wills by the testator have rarely, if ever, declared what constitutes a signing or signature, and, while there are many decisions upon that subject in its relation to other wills, there are few indicating whether the results reached are equally applicable to wills which have been admitted to probate only on the ground that they are olographic. The question whether a signature to a will may consist of the testator's mark cannot arise, because the existence of the balance of the will in his handwriting demonstrates his ability to write, and hence the absence of any necessity for using a mark. There is certainly no need of his writing his name in full, but it is doubtless sufficient that the signature written is that ordinarily used by him in other business transactions. It may probably consist of initials, or even of a fictitious or assumed name. "The title by which a man calls himself and is known in the community is his name, whether it be the one he inherited or had originally given him or not. So the form which a man customarily uses to identify and bind himself in writing is his signature, whatever shape he may choose to give it. Nor is there any fixed requirement how much of the full name shall be written." Hence, an olographic will signed only by the testatrix's given name "Harriet" was upheld: Estate of Knox, 131 Pa. 220, 17 Am. St. Rep. 798, 18 Atl. 1021, 6 L. R. A. 353.

The Place of the Signature is not Material unless made so by statute. It need not be at the end: Estate of Stratton, 112 Cal. 513, 44 Pac. 1028; Estate of Camp, 134 Cal. 233, 66 Pac. 227. It is true

that the name of the testator written in the body of the will cannot be treated as his signature when not intended to be such: In re Armant's Will, 43 La. Ann. 310, 26 Am. St. Rep. 193, 9 South. 50; and that where, as in Virginia, the statute declares that the name of the testator written in a will shall not be regarded as his signature unless there is something on the face of the paper indicating that it was intended to be such, the mere presence of such name in the will in his handwriting cannot be accepted as his signing or signature in the absence of any such intention so appearing: Waller v. Waller, 1 Gratt. 454, 42 Am. Dec. 564; Ramsay v. Ramsay, 13 Gratt. 664, 70 Am. Dec. 438; Roy v. Roy, 16 Gratt. 418, 84 Am. Dec. 696. Still, the general rule is, in the absence of some statutory prohibitions, that the name of the testator written by him, either in the introductory or closing clause of his will, constitutes his signature: In re Camp's Estate, 134 Cal. 233, 66 Pac. 227; Lawson v. Dawson's Estate, 21 Tex. Civ. App. 361, 53 S. W. 64; and even under the Virginia statute, the concluding clause of a will stating "I, William Dinning, say this is my last will and testament," sufficiently indicates that the name so written was intended as the signature of the testator, and entitles the will to admission to probate as olographic: Dinning v. Dinning, 102 Va. 467, 46 S. E. 473. Not at all reconcilable with the foregoing statements is the decision in Booth's Estate, 127 N. Y. 109, 24 Am. St. Rep. 429, 27 N. E. 826, 12 L. R. A. 452. The will there in question was witnessed and attested by two persons and was wholly in the handwriting of the testatrix, and though not otherwise signed by her, contained her name in the opening clause and also her maiden name at the end. One of the subscribing witnesses testified that the testatrix said to her: "This is my will; take it and sign it." The court held that this evidence was insufficient to sustain a finding or verdict that the testatrix's name written by her in the first line of the document was there written with the intent that it should have effect as her signature in the final execution of the will, saying: "Whenever the name of a testator appears, whether in the body or at the end of a will, it must have been written with intent to execute it, otherwise it is without force. When a testator or the maker of a contract subscribes it at the end and in the manner in which legal instruments are usually authenticated, a presumption arises that the signature was affixed for the purpose of creating a valid instrument. But when the name is written near the beginning of the document, where, as a rule, names are inserted by way of description of the person who is to execute it, and rarely as signatures, it must, before it can be held to have been inserted for the purpose of validating the instrument, be proved to have been written with that intent."

The Following Summary of the French Doctrine upon the subject appears to meet the approval of the supreme court of Louisiana:

"Although the natural place of the signature be at the end of the act, because it expresses the final approval given by the testator to the dispositions of last will which he has made, it is, however, admitted that the writing by the testator of his name toward the end of the act may be considered as a signature, if it is placed after all the dispositions constituting the testament. It does not matter that after the name there may follow some words connected with it, if the words thus following are superfluous or useless." In the case whence this quotation is made it appeared that the will in question commenced with a caption as follows: "Testament d'Aglae Armant." The court was of the opinion that the name as thus written could not be accepted as signature, partly upon the ground that it was not written in the ordinary manner of a signature and was "without a paragraph," the evidence showing that the testatrix ordinarily employed one, and further, "that the coupling of the 'd' with the name in itself excludes the idea of its being intended as a signature." The decision was also partly upon another ground, which the court thus expressed: "Even apart from the name's not being at the end of the testament, we think the proof does not show that she intended to sign at all. It simply shows that she did not think or know that a signature was essential. If she had known that it was necessary that the testament should be signed, it is impossible to conceive how, in so important a matter, she should have acted so ambiguously and so differently from the course universally pursued by her in signing other acts and documents of every description. The simple fact is, she did not know that a signature was necessary, and therefore did not sign. Her mistake in this respect is unfortunate in the interests of justice, but it cannot save the will."

Necessity for Witnessing and Attesting.—The authorities, in so far as they speak upon the subject, indicate that the recognition of olographic wills does not exempt them from the general provisions contained in the statutes respecting the manner of witnessing and attesting wills. Hence, in the absence of any statutory provision to the contrary, olographic wills must be published, witnessed and attested in the same manner as others, but criticism of the term of what is claimed to be a sufficient publication need not be so severe as where the will is not wholly in the testator's handwriting: Trustees v. McKinstry, 75 Md. 188, 23 Atl. 471; Matter of Application of Becket, 103 N. Y. 167, 8 N. E. 506; Matter of Hunt, 110 N. Y. 281, 18 N. E. 106; Matter of Turrell, 47 App. Div. 560, 62 N. Y. Supp. 1053; 166 N. Y. 330, 59 N. E. 910; In re Aker's Will, 173 N. Y. 620, 66 N. E. 1103, 74 App. Div. 461, 77 N. Y. Supp. 643; Neer v. Cowhick, 4 Wyo. 49, 31 Pac. 862, 18 L. R. A. 588. In many of the states, however, olographic wills need not be published nor witnessed, nor otherwise attested than by the testator's signature. In other words, such a will is entitled to admission to probate on proof in the manner required by statute that it is wholly written, dated,

and signed in the handwriting of the testator: Ariz. Rev. Stats., ed. 1887, secs. 3234, 3235; Cal. Civ. Code, sec. 1277; Idaho Rev. Stats., sec. 5728; Scott v. Harkness, 6 Idaho, 736, 59 Pac. 566; Toebbe v. Williams, 80 Ky. 661; Webster v. Lowe, 107 Ky. 293, 53 S. W. 1030; La. Civ. Code, arts. 1581, 1588; Williams v. Hardy, 15 La. Ann. 286; Buffington v. Thomas (Miss.), 36 South. 1039; Barney v, Hays, 11 Mont. 571, 28 Am. St. Rep. 495, 29 Pac. 282; Outlaw v. Hurdle, 1 Jones (N. C.), 150; Alston v. Davis, 118 N. C. 202, 24 S. E. 15; Estate of Knox, 131 Pa. 220, 17 Am. St. Rep. 798, 18 Atl. 1021, 6 L. R. A. 353; Regan v. Stanley, 11 Lea, 316; Lawson v. Davison's Estate, 21 Tex. Civ. App. 361, 53 S. W. 64; Dinning v. Dinning, 102 Va. 467, 46 S. E. 473; West Va. Laws, ed. 1882, c. 84, sec. 3.

A Will, Though Olographic, may be Followed by an Attestation Clause, or may otherwise indicate that the testator intended to have it witnessed and attested in the same manner as if not olographic. In such circumstances, if there are no subscribing witnesses, or not a sufficient number of them, or one is incompetent to act as such, it may be claimed that the testator had designed to complete the execution of the will as if it were not olographic, and that, because of his failure to do so, it cannot be admitted to probate. The answers, however, have been uniform to the effect that if the will was executed in the manner required of olographic wills, it was entitled to admission to probate, notwithstanding the fact that the testator intended to execute it in the presence of subscribing witnesses, and believed such presence essential to its validity: In re Soher, 78 Cal. 477, 21 Pac. 8; Toebbe v. Williams, 80 Ky. 661; Andrew's Exrs., 12 Mart. (O. S.) 713; Succession of Roth, 31 La. Ann. 315; Brown v. Beaver, 48 N. C. 516, 67 Am. Dec. 255; Hill v. Bell, 61 N. C. 122, 93 Am. Dec. 583; Allen v. Jeter, 6 Lea, 672; Perkins v. Jones, 84 Va. 358, 10 Am. St. Rep. 863, 4 S. E. 833.

A testamentary document in the handwriting of the testator, and having subscribing witnesses, may be proved either as an olographic or as an attested will: Estate of Dama, 4 Cof. Pro.

The Place Where the Will was Lodged or Found is generally not material, but in two of the states it must have been found among the valuable papers and effects of the decedent, or have been by him lodged with another person for safekeeping: Winstead v. Bowman, 68 N. C. 170; Tate v. Tate, 11 Humph. 464. The meaning of these requirements has not been much litigated. The decedent may have two or more places in which he keeps papers and valuables, and one may be so far superior to the other, or so much more resorted to by him as a depository of his valuables that an olographic will found in the other will not be admitted to probate: Little v. Lockman, 49 N. C. (4 Jones) 494. Nevertheless, the circumstances must be rare in which the courts will consider, as between two places where valuable papers and effects are kept, which is the only one in which

an olographic will may be safely placed, and if found in either place, it will generally not be refused probate because the court deems the other the safer place or the one which the decedent has been in the habit of leaving the more valuable papers and effects: Winstead v. Bowman, 68 N. C. 170.

The depository may be a drawer in a desk or bureau (Hughes v. Smith, 64 N. C. 493; Harrison v. Burgess, 8 N. C. (1 Hawks Eq.) 384), or a trunk left for safekeeping with a friend (Hill v. Bell, 61 N. C. (Phil. L.) 122, 93 Am. Dec. 583), if therein are left the valuable papers and effects of the decedent. Of course, the real question is, whether from the place where the will is found, the inference is reasonable that the testator left or caused it to be left there as and for his olographic will: Marr v. Marr, 2 Head, 303; Hooper v. Mc-Quary, 5 Cold. 129; Douglass v. Harkrender, 3 Baxt. 114. The surroundings and habits of one person may be such as to make it exceedingly improbable that he used a depository, the use of which in the case of another person would be entirely reasonable. It is sufficient that the testator kept or preserved his will in the same manner that he kept other valuable papers: Winstead v. Bowman, 68 N. C. 170; Tate v. Tate, 11 Humph. 464. As to the will itself, it need not be a separate or formal document, but may be written in a book of accounts, if such book is found with other valuable papers of the decedent: Brown v. Eaton, 91 N. C. 26. From the finding of the will among the papers of the decedent, it will be presumed that he placed it there on the day it bears date: Sawyer v. Sawyer, 52 N. C. (7 Jones) 134.

By valuable papers is not necessarily meant deeds, important contracts, etc., or papers of great pecuniary value, but simply such papers as the decedent seems to have regarded as important to him and to the preservation of which he has given the same attention as to his olographic will: Marr. v. Marr, 2 Head, 303. But an olograph is not found among valuable papers when it is found in box in which the testator kept stamps and stationery belonging to a post-office of which he had charge, while he kept his deeds, notes and the like in a trunk at his residence, some distance away: Brogan v. Barnard, 115 Tenn. 260, 112 Am. St. Rep. 822, 90 S. W. 858.

The mere finding of a will among the papers of a third person is not sufficient to show that it had been left with him by the testator for safekeeping: St. John's Lodge v. Callender, 26 N. C. (4 Ired.) 335. The person with whom the will is deposited may be the wife of the testator: Harrison v. Burgess, 8 N. C. (1 Hawks Eq.) 384. Where the will is a part of a letter written by the testator to another, it is not necessary that the latter should have received any instructions from the former respecting its preservation or safekeeping: Alston v. Davis, 118 N. C. 202, 24 S. E. 15.