W. H. WINSTEAD and wife v. W. F. BOWMAN and wife, and others.

Where a script, alleged to be a holograph will, was found in a trunk of the decedent, in which he had valuable papers, and it appeared that the decedent had also a tin box, deposited in bank, in which he had other papers intrinsically of more value than were those in the trunk : *Held* to be error in the Judge, on the trial of an issue, *devisavit vel non*, to charge the jury, in relation to there being two proper depositories of a holograph will under the statute, that " to constitute such, he (the Judge) was satisfied there must be a somewhat equal division of the valuable papers and effects between the two places claimed as legal depositories."

The phrase, "among the valuable papers and effects of," &c., used in sec. 435 (2), Code of Civil Procedure, does not necessarily and without exception mean among the *most* valable papers, &c.

Valuable papers consist of such as are regarded by a decedent as worthy of preservation, and therefore in his estimation, of some value; depending much upon the condition and business and habits of the decedent in respect to keeping his valuable papers.

(*Little* v. *Lockman*, 4 Jones, 494, cited and commented on.)

DEVISAVIT VEL NON, tried at the Fall Term, 1872, of the Superior Court of GUILFORD county, before *Tourgee, J.*

The script propounded in the Probate Court, was, by the plaintiffs, alleged to be the last will and testament of one Andrew D. Lindsay, and to be altogether in his handwriting. The questions arising upon the trial in the Court, the issues submitted to the jury, and the evidence introduced on the trial, are fully set out in the opinion of the Court.

The jury, upon the issues made up and submitted to them, having found, that the script propounded was in the hand-

writing of A. D. Lindsay, the decedent, but was not found among his most valuable papers, and was not his last will and testament, it was so adjudged by his Honor. From which judgment, the propounders (plaintiffs) appealed.

*W. A. Graham* and *Scott & Scott,* for propounders.
*Dillard, Gilmer & Smith,* and *Smith & Strong,* for caveators.

RODMAN, J. This was an issue upon a writing propounded as the will of Andrew Lindsay. It was admitted on the trial to be entirely in his handwriting. It was not subscribed, but his name was written in the first part of the writing, which declared it to be his will.

Three issues were submitted to a jury :

1. Was the paper writing, &c., found among the valuable papers and effects of the deceased at his death ?

2. Is it in his handwriting ? (This was admitted.)

3. Did the alleged testator intend the script propounded to be his last will and testament?

The jury under the instruction of the Judge, found " that the script was in the handwriting of the deceased, but was not found among his most valuable papers, and that it is not his last will." ·Whereupon the Court gave judgment for the caveators and the propounders appealed.

The only issue upon which the Judge seems to have instructed the jury or to have been requested to instruct them, was the first. His instructions on this excluded any consideration of the third issue. As in the view we take of this case, it must go back for a new trial. The instructions of the Judge upon the first issue will be the only subject considered.

They were these: " Upon the hypothesis of there being but one proper place of deposit, to-wit : with the valuable papers and effects, that is, the *most valuable,* (the word "in" is here in the record, but evidently by mistake,) the trunk

in which the script was found was not a proper depository under the statute. The propounders however insisted that there might be two proper depositories for a holograph will under the statute; but to constitute such, he (the Judge) was satisfied there must be a somewhat equal division of the valuable papers and effects between the two places claimed as legal depositories. So that, if in this case, the jury are satisfied that the papers and effects found in the trunk were insignificant in appreciable value as compared with the papers and effects found in the tin box, then the trunk was not a legal depository in any view which can be taken of it under the statute." The evidence as to the place of finding was, in substance, this: The deceased was a single man. He lived in Greensboro for several years before his death and occupied a room in the same building with the Bank of Greensboro. He died in Richmond, whither he had gone for his health, in November 1870. After his death the room in Greensboro was found locked, and in it was found a trunk, also locked, one of the keys to which was found in the tin box hereafter spoken of. In a tray of the trunk were found the script in question, some old letters and receipts, accounts of the settlement of a partnership in which the deceased had been concerned, several memorandum books, seven notes payable to deceased, amounting in all to the nominal value of $600 or thereabouts, and a list of the bonds, &c., hereafter mentioned as found in a tin box. In the trunk, below the tray, were found articles of wearing apparel. Some of the above papers were tied up in bundles, but most of them were lying loose. One envelope was endorsed in the handwriting of the deceased, " Receipts and valuable papers," but it contained only old accounts receipted at the foot, and some notes made by the deceased which he had paid and from which he had torn his name.

In a tin box, which had been left by the deceased in the care of the Bank of Greensboro, were found a key to the

above mentioned trunk, bonds of the State of North Carolina to the nominal amount of $11,500, and bonds and notes of individuals to the nominal value of about $10,000.

It will be seen that while the papers found in the trunk were not insignificant, and possessed some value, both as evidences of past transactions and of existing credits, yet their value in both respects was greatly less than that of those found in the tin box.

We will now consider the instructions of the Judge founded on this state of the evidence.

The Revised Code (ch. 119, sec. 1) enacts that no last will shall be good unless signed by the testator and witnessed, " or unless such last will and testament be found among the valuable papers and effects of any deceased person," &c.

Can this script, upon a proper construction of the statute, be said to have been found among the valuable papers *and* effects of the deceased? The word " and," italicized above, stood " or" in the Revised Statutes, but was substituted in the Revised Code (1856). We do not think that this substitution was intended to make any change in the meaning of the Act. At all events, it made none to affect the present case. We only notice it to put it out of the way.

The leading case in this State—we may say the only one touching the question before us—is *Little* v. *Lockman*, 4 Jones, 494 (1857). We do not mean to question the propriety of the judgment in that case. But with great respect for the learned and able Judge who delivered the opinion of the Court, it seems to us that he put too much stress on the definite article " the" in the expression " the valuable papers," &c. It may be inferred from the argument of the learned Judge, though probably it was not intended to be, that if a man has two places in which he keeps his valuable papers, &c., and what purports to be his will, be found in that one of them in which other papers are found of considerable value in themselves, but very greatly surpassed by

the value of those found in some other place, the script (not being found among the *most* valuable papers) is not found in such a place as the statute requires in order to give it validity as a will. This inference, however, is not a legitimate one, (although the learned Judge below seems to have drawn it); for, the Judge whose opinion we are considering, clearly admits that a man may have two places in which he keeps his valuable papers, and then goes on to contrast, not two places in both of which are papers of value, but of unequal values, but two places in one of which are found papers of no appreciable value, and in the other papers of value. Thus understood, the justness of the opinion will not be questioned. In the present case, however, the deceased did have two places, in both of which he kept papers of value, although the value of those in one was greatly in excess of that of those in the other. So the question is distinctly presented : must the script be found in that place in which the *most* valuable papers were kept? We think that it is not only possible for a man to have more than one place for keeping his valuable papers and effects, but that men of any considerable estate, or engaged in any considerable business, do in general have two such places or more. A merchant in a city will probably keep his cash on deposit in a bank ; the sum he carries in his pocket-book or keeps in the drawer of his counting-house desk, will be inconsiderable.

If he owns real estate, or government or other bonds, as a permanent investment, he may keep them in a tin box in the vaults of a security company or of a bank. His notes and bills becoming payable weekly or daily, he will keep in his place of business for ready access. His wife may have still another place, in which she keeps her costly articles of jewelry. So a planter may keep his bonds in a bank in town, the ready money he needs for the current expenses of his business he may keep in a safe or other secure place, while his accounts of sales from his factor, though repre-

senting a much larger amount than either of the others, yet as presenting fewer temptations to theft, he may leave in the pigeon hole of his desk. A will, as not being a temptation to theft and as having very little value during a man's life and health, may as probably be found in one of these places as in another, depending somewhat upon the fixedness and intended permanence of its provisions, and somewhat, perhaps, on individual habits. As long as the provisions were still the subject of reflection, and liable to be changed by the changing circumstances of fortune and family, a testator might wish to keep his will accessible; but when these were once fixed on, without the probability of a wish to change, he might prefer putting it in a place less convenient of access, but more safe. Many other illustrations might be put, drawn from the different conditions of life arising out of differences of estate or business pursuits. So a man who made his will at home might put it among one class of valuable papers, while one who made it on a journey might be under the necessity of putting it among papers and effects of no very great value either intrinsically or as compared with his estate.

From these considerations, we are led to conclude that the phrase " among the valuable papers and effects," cannot, necessarily and without exception, mean " among the *most* valuable," &c. If that were required, it might be difficult for one who had two or more places for keeping his valuable papers, to know in which he could safely place his will. The values in cash would be liable to change more or less frequently. It might well happen that a bond or a large sum might be paid off and the money deposited in bank or invested in real estate, so that the place which contained the most valuable papers to-day, might to-morrow contain only those of comparatively insignificant value.

The phrase cannot have a fixed and unvarying meaning to be applied under all circumstances. It can only mean

that the script must be found among such papers and effects as show that the deceased considered it a paper of value, one deliberately made and to be preserved, and intended to have effect as a will. . This would depend greatly upon the condition, and business, and habits of the deceased in respect to keeping valuable papers, and the place and circumstances under which the script was executed, viz: whether at home or on a journey, &c.

It was not the intention of the Legislature to destroy, or unreasonably restrict, the power of making a holographic will; but simply to assure that the writing offered as a will was really and deliberately intended as such. The place in which it is found, supposing it to be found among valuable papers and effects, is but one circumstance in evidence upon that issue.

The English law as to wills of personal property at the date of our statute, and up to 1838, will be found in 1 Redfield on Wills, 201 *et seq.* The policy of our statute seems to have been to restrict the facility with which testamentary papers were allowed probate in the English Courts.

We believe that no statute similar to ours is found in any State except Tennessee, which received it as an advancement from us when she quit the parental domicile, and set up for herself as an independent member of the sisterhood of States. We have consulted the decisions of the Courts of that State, and are glad to find that they support the views here presented. In the latest case we have found, *Marr* v. *Marr*, 2 Head, 303, (1859,) the Court say : " What is meant by valuable papers? No better definition, perhaps, can be given than that they consist of such as are regarded by the testator as worthy of preservation, and therefore in his estimation, of some value. It is not confined to deeds for land or slaves, obligations for money, or certificates of stock. Any others which are kept and considered worthy of being taken care of by the particular person, must be regarded as em-

braced in that description." The whole opinion is worth reading, in reference to this case. See also 11 Ham, 385–465; 2 Sneed, 156.

Judgment reversed.

PER CURIAM. *Venire de novo.*