This is a caveat to a paper-writing which purports to be the last will and testament of W. T. Jenkins. Upon issues submitted to them, the jury found that the script and every part thereof is in the handwriting of the said Jenkins. It was unattested. The jury also found that the paper-writing, which had been proved in common form, is the will of W. T. Jenkins.
The evidence tended to show that Jenkins died in May, 1909, and after his death a search was made for a will by Levi Browning, who married his niece, and had lived in the house with him three years, his wife having lived there practically all her life. The witness Browning testified that they searched the clothes of the deceased and looked over the papers and his house and his room. On direct examination he said there were no papers in the house, but on cross-examination corrected that statement and said that there were some papers in W. T. Jenkins' bedroom in a bureau. They did not find a will in the house, according to Browning, and proceeded to examine the papers at W. T. Jenkins' store. The witness was asked:
Q. W. T. Jenkins was a business man, was he not? A. Yes, sir; so far as I know.
Q. He did have some papers that you found at the store? A. Yes, sir.
Q. Valuable papers — notes and mortgages, were they not? A. I don't know that they were so valuable; didn't seem to be kept up. Of course, there were some valuable papers in them — some deeds and things.
According to the evidence of Browning and other witnesses, Captain Jenkins was a man of good business judgment, and a great many of the people in the neighborhood would come and get him to write papers for them. The paper-writing was dated 9 April, 1909, and the witness testified that W. T. Jenkins' mind was sound at that time. (432) Browning further testified that after N.E. Jenkins, a brother of the deceased, had qualified as administrator, which was twelve or fifteen days after the death of Captain Jenkins, he renewed the search for a will and found the paper-writing offered for probate in a table drawer in the hall of Captain Jenkins' house. The paper was in an envelope with some insurance papers — insurance on his gin and dwelling — only one of which was then in force. After finding this paper, the witness, according to his own admission, did not tell any one connected with the estate or with Captain Jenkins about finding this paper until it was offered for probate, and he refused to let anybody compare the handwriting. Carrie E. Browning, who will take one-half of the estate of Captain Jenkins if this will is sustained, and who is the wife of Levi *Page 340 
Browning, testified that it was two or three weeks after the death of Captain Jenkins before the will was found. She describes the finding of it as follows:
"Well, as there had not been one found, of course we were on the lookout for one. We were hunting for some medicine my husband was taking; there was a person in the neighborhood who wanted some poison, and he wanted to send him some sugar of lead, and he, with the object in view of finding a will, if there was one, and to get this medicine, happened to think of this drawer, and went in there and found this paper." Mrs. Browning was asked why the table was not examined earlier. She answered: "Because we did notthink of papers being in there, as it was used for this poison medicine generally, as well as other kinds." The witness also said that she had turned the drawer to the wall to keep the children from going in where this medicine was. She further said: "I knew what was in the drawer, but it was a drawer not used much — in everyday use, I should have said." Asked, "How long, Mrs. Browning, before the death of Captain Jenkins did you go in the drawer?" she answered: "Well, it probably might have been several months since we needed an article in that drawer."
Q. During his sickness you kept his medicines in that drawer? A. No, no; did not keep them in there. We had them fresh from the doctor — kept them right on his table and administered them from his (433) table.
Levi Browning was recalled and testified that he found the paper in an envelope which was offered in evidence, and that insurance policies were also in the envelope. There was evidence that the will was found in an envelope on which was written, in the handwriting of W. T. Jenkins, the word "Important." Much testimony was introduced by the propounders to prove that the script was in the handwriting of W. T. Jenkins, and by the caveators to show the contrary. Evidence was also offered by the caveators as to the circumstances under which the paper was found in the drawer. N.E. Jenkins, a witness for the caveators and a brother of the deceased, testified that he examined all the papers of W. T. Jenkins, both at his house and store, but could not find a will; about fifteen days after his brother's death he qualified as administrator, and several days later, about the 18th or 19th of May, he received notice of the existence of this paper, but was not notified by Browning.
At the close of the caveators' evidence, Levi Browning was again recalled and testified that there was another policy in the envelope, that had expired. At the close of the evidence the caveators requested the court to instruct the jury that, upon the evidence, they should answer the issue "No," thereby finding that the paper-writing exhibited by the *Page 341 
propounders is not the last will and testament of W. T. Jenkins, and they also asked for special instructions based upon the insufficiency of the evidence to establish the will, all of which were refused, and caveators excepted and from the judgment against them appealed to this Court.
After stating the case: There was sufficient evidence in the case to prove that the script was found in the drawer with policies of insurance, some of which had expired, and that it had been placed there by W. T. Jenkins, in an envelope upon which he had written the word "Important," and that Levi Browning, when he found it, immediately took it from the envelope and read it to his wife, (434) and the next morning she read it. In the paper, the testator devised and bequeathed his property to his nieces, Bessie M. Liles and Carrie E. Browning, wife of Levi Browning, who seem to have had the best claim upon his bounty, and appointed as his executor Hon. E. L. Travis, who had been his attorney and legal adviser. The formal execution of the script was sufficiently proved before the clerk, and at the trial of the issue devisavit vel non; but the contention of the caveators is that the paper was not found "among the valuable papers and effects" of the deceased, as required by statute (Revisal, sec. 3127). Prior to the enactment of the Revised Code the language of the Statute was "that such will was found among the valuable papers or effects of the deceased." We do not think the substitution of the copulative for the disjunctive conjunction was intended to make any substantial change in the law and the word "and" should be construed as "or." Otherwise a person owning effects of ever so much value, but not having any valuable papers, or a person having valuable papers, but no valuable effects, could not execute a valid holographic will. We cannot believe the Legislature contemplated such a radical change in the law and that any such result should follow the change of a single word, and it has been so held, with good reason. Hughes v. Smith, 64 N.C. 493; Winstead v. Bowman,68 N.C. 170. In the last case, Justice Rodman said: "We do not think this substitution (`and' for `or') was intended to make any change in the meaning of the statute. At all events, it made none to affect the present case. We only notice it to put it out of the way." Besides, the word "effects" is comprehensive in meaning and is broad enough to include policies of insurance, which will answer both descriptions, valuable papers and effects. Brown v. Eaton, 91 N.C. 26.
We will now proceed to consider the other question, whether the paper was found in a proper place of deposit. "The statute of frauds in England, *Page 342 
in relation to wills, and our act upon the same subject, have in view the same object, namely, the protection of the heirs at law, and next of kin of a decedent, from the effect of a forged or false paper as a will. For that purpose many forms and ceremonies are required (435) to be observed in the execution of such instruments. With regard to attested wills, the requisites of the English, and our statute, except as to the number of witnesses, are substantially the same. It is well known to the profession how strictly — we may say, sternly — the courts in both countries have demanded a compliance with these provisions of the law. The same policy must govern us when we come to decide whether the requirements of our statutes have been complied with in the execution of a paper-writing, propounded as a holograph will. One alternative requisition of the statute is that it must be `found among the valuable papers or effects' of the alleged testator." Little v.Lockman, 49 N.C. 495. The provisions of the statute are, of course, mandatory and not directory, and therefore there must be a strict compliance with them before there can be a valid execution and probate of a holograph script as a will; but this does not mean that the construction of the statute should be so rigid and binding as to defeat its clearly expressed purpose. It must be construed and enforced strictly, but at the same time reasonably. "The requirements of the statute are sufficiently complied with if the script is found among the valuable papers and effects, under such circumstances as that the deceased regarded it as a valuable paper (worthy of preservation) and desired it to take effect as his will." Hughes v. Smith, supra. This Court said inWinstead v. Bowman, 68 N.C. 170: "We are led to conclude that the phrase `among the valuable papers and effects,' cannot, necessarily and without exception, mean `among the most valuable,' etc. If that were required, it might be difficult for one who had two or more places for keeping his valuable papers to know in which he could safely place his will. The values in cash would be liable to change more or less frequently. It might well happen that a bond or a large sum might be paid off and the money deposited in bank or invested in real estate, so that the place which contained the most valuable papers today might tomorrow contain only those of comparatively insignificant value. The phrase cannot have a fixed and unvarying meaning to be applied under all circumstances. It can only mean that the script must be found among such papers and effects as show that the deceased considered it a paper of value, one deliberately made and to be preserved, and (436) intended to have effect as a will. This would depend greatly upon the condition, and business, and habits of the deceased in respect to keeping valuable papers, and the place and circumstances under which the script was executed, viz., whether at home or on a journey, etc. It *Page 343 
was not the intention of the Legislature to destroy, or unreasonably restrict, the power of making a holograph will; but simply to assure that the writing offered as a will was really and deliberately intended as such. The place in which it is found, supposing it to be found among valuable papers and effects, is but one circumstance in evidence upon that issue." Referring to this passage in Judge Rodman's opinion, the present Chief Justice said In re Sheppard's Will, 128 N.C. 54: "In Winstead v. Bowman, 68 N.C. 170, that Court criticized, if it does not overrule, the narrow rule which had been laid down in Little v.Lockman, 49 N.C. 494," citing with approval Tate v. Tate, 30 Tenn. (11 Head.), 466, to this effect: "The intention of the statute is that it shall appear to be a will whose existence and place of deposit were known to the testator, and that he had it in his care and protection, preserving it as his will"; and, also, Reagan v. Stanly, 179 Tenn. (11 Lea), 316, to this effect: "In a diary was found, imbedded among other entries, a disposition of property, written and signed. This diary was found among his books of account, and the will therein written was (held to have been properly) admitted to probate." Substantially to the same effect is Harper v. Harper, 148 N.C. 453. The fact that it is found among the writer's valuable papers and effects implies that it must have been placed there by him, or with his knowledge and consent or approval, with the intent that it should operate as his will, and not that it was deposited surreptitiously by another person for the purpose of defeating instead of executing his will. If the paper is so found, it will be presumed that the deposit of it in the place was made by him or with his assent, and, in the absence of evidence to the contrary or of suspicious circumstances, no proof of the fact is required. Pritchard on Wills, sec. 236; Hooper v. McQuary, 5 Cold., 136. The statute does not demand proof that the author of the paper made the deposit, but only that it was found among his valuable papers and effects, and (437) proof of this fact is quite sufficient, at least, in the first instance and when there is no countervailing proof. "`Valuable papers' within the meaning of the statute are such papers as are kept and considered worthy of being taken care of by the particular person, having regard to his condition, business, and habits of preserving papers. They do not necessarily mean the most valuable papers of the decedent even, and are not confined to papers having a money value, or to deeds for land, obligations for the payment of money, or certificates of stock. The requirement is only intended as an indication on the part of the writer that it is his intention to preserve and perpetuate the paper as a disposition of his property, and that he regards it as valuable; consequently, the sufficiency of the place of deposit to meet the requirement of the statute will depend largely upon the condition and *Page 344 
arrangements of the testator." Pritchard on Wills, sec. 237; Winstead v.Bowman, 68 N.C. 170; Marr v. Marr, 2 Head., 303; S. c., 5 Sneed, 385;Allen v. Jeter, 6 Lea, 672; Reagan v. Stanly, 11 Lea, 316.
Applying these principles to the facts of our case, it would seem that there had been such a full compliance with the provisions of the statute as to constitute the paper-writing found in the drawer of the table the will of the writer. He appears not to have been very careful in handling his papers. There were these places of deposit: his desk in the store, his bureau in his home, his bookcase, and the drawer of the table in the hall of his house. It would appear that of the four, he regarded the drawer of the table as the most important place of deposit, for he not only placed in it his policies of insurance, but the script was found in an envelope on which he had written the word "Important." What could be more indicative of his desire that the paper should take effect as his will, and of the fact that he considered the place as one for the deposit of his valuable papers, than his words that the papers inclosed in the envelope were "important"? But aside from this fact, a policy of insurance is a valuable paper (Harper v. Harper, supra; Hooper v. McQuinn, supra) within the meaning of the statute, and it was evidently so considered by him. As testified by one of the witnesses, the papers in the (438) other places of deposit were not so kept as to show that he regarded them as of any great value, nor, under the circumstances, would it be any more likely that his will should have been found there than in the drawer of the table at his home? The court left it to the jury to say whether, under all the facts and circumstances, W. T. Jenkins had placed the paper in the drawer with the intention to preserve and take care of it as his will, telling them that within the meaning of the law a policy of insurance is a valuable paper. The jury were properly instructed as to how they should consider and apply the evidence in the case. We do not see why this was not a proper instruction, and as much so as similar ones which were given in the cases we have cited. Whether the table drawer was a proper place of deposit under the statute was a question to be determined largely by the jury upon the particular facts of the case. It was certainly not error to submit the question to the jury instead of deciding it as matter of law. In reSheppard's Will, supra. If the jury found that W. T. Jenkins placed the paper in the envelope, with the policies of insurance, and deposited them in the drawer, intending that it should be his will, the requirements of the statute were fully observed, and their verdict declaring the paper to be his last will and testament was warranted in law.
Brogan v. Barnard, 115 Tenn. 260, cited by appellant's counsel, is not in point. It was decided upon the ground that the stamps and stationery were not valuable papers, as they did not record anything, *Page 345 
and, besides, they did not belong to the writer of the script, but to the United States.
We find no error in the rulings or charge of the court.
No error.
Cited: In re Cole, 171 N.C. 76; Alexander v. Johnson, ib., 470, 471.